231 P.3d 529

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Dawn Lenore SCHULTZ, Defendant–Appellant.**

**No. 32111.**

Court of Appeals of Idaho.

Dec. 15, 2008.

Review Denied March 9, 2009.

account debit card and would withdraw cash for Shayne using her checking account ATM card. After unauthorized transactions were detected, Schultz was charged with two counts of grand theft and four counts of forgery for filling out checks to herself and signing Shayne's name to the checks. Schultz was convicted on all six counts. Thereafter the state sought restitution, and after two hearings on the matter, the district court ordered Schultz to pay a total of $21,985.28 in restitution.

Molly J. Huskey, State Appellate Public Defender; Eric D. Fredericksen, Deputy Appellate Public Defender, Boise, for appellant. Eric D. Fredericksen argued.

Hon. Lawrence G. Wasden, Attorney General; Ann Wilkinson, Deputy Attorney General, Boise, for respondent. Ann Wilkinson argued.

SCHWARTZMAN, Judge Pro Tem.

Dawn Lenore Schultz appeals from the district court's order of restitution following her convictions for two counts of grand theft and four counts of forgery after a jury trial. She contests certain amounts of restitution to the victim as awarded by the district court. We affirm as modified and remand for entry of a corrected order of restitution.

## I.

## FACTS AND PROCEDURE

The victim in this case, Audrey Shayne, hired Schultz as her personal assistant. Schultz's duties included opening mail, identifying bills, filling out checks on Shayne's checking account for those bills, obtaining her signature and remitting the payments. On occasion, Schultz would also, at the victim's direction, order goods for Shayne online using one or more of Shayne's credit cards, would buy goods using Shayne's checking

## II.

## ANALYSIS

■ Schultz contends that approximately $2,500 of the restitution amount was awarded in error in contravention of the restitution statute.[1] The vast majority of Schultz's complaints relate to the count of grand theft by unauthorized control, Idaho Code §§ 18–2403(3), –2407(1)(b), charged as occurring between October 2003 and May 2004.[2] On this count, the state presented evidence at trial of unauthorized individual transactions made by Schultz on the victim's credit cards and bank accounts. At the restitution hearing, however, the state sought, and was awarded, restitution for additional unauthorized individual transactions. Schultz contends that this was error, focusing on the following italicized provisions of the controlling restitution statute, Idaho Code § 19–5304:

(1)(a) "Economic loss" includes, but is not limited to, the value of property taken, destroyed, broken, or otherwise harmed, lost wages, and direct out-of-pocket losses or expenses, such as medical expenses *resulting from the criminal conduct* . . . .

. . . .

(1)(e) "Victim" shall mean:

(i) The directly injured victim which means a person or entity, who suffers

1. In her appellate brief, Schultz concedes that she is liable for $19,421 of the restitution ordered by the court.

2. That charge reads as follows:
    That the Defendant, DAWN LENORE SCHULTZ, on or between October 2003, and May, 2004, in the County of Ada, State of Idaho, did knowingly exercise unauthorized control and/or made unauthorized transfer of an interest over credit card accounts and/or bank accounts, the property of Audrey Shayne, with the intent to deprive the owner thereof and/or did the above taking a value in excess of One Thousand Dollars ($1000) lawful money of the United States.

economic loss or injury *as the result of the defendant's criminal conduct . . . .*

. . . .

(9) The court may, with the *consent* of the parties, order restitution to victims, and/or any other person or entity, for economic loss or injury for *crimes which are not adjudicated or are not before the court.* (Emphasis added.) The gist of Schultz's argument is that if sufficient evidence was not adduced at trial concerning specific individual occurrences of theft, this criminal conduct has necessarily not been adjudicated and restitution for these amounts cannot be awarded absent her consent, which was not obtained in this case.

▪ The decision whether to require restitution is committed to the trial court's discretion, whose findings of fact will not be disturbed if supported by substantial evidence. *State v. Smith,* 144 Idaho 687, 692, 169 P.3d 275, 280 (Ct.App.2007). It is generally recognized, however, that courts of criminal jurisdiction have no power or authority to direct reparations or restitution to a crime victim in the absence of a statutory provision to such effect. *State v. Richmond,* 137 Idaho 35, 37, 43 P.3d 794, 796 (Ct.App.2002). Orders for the payment of restitution to crime victims are governed by I.C. § 19–5304. *State v. Gonzales,* 144 Idaho 775, 777, 171 P.3d 266, 268 (Ct.App.2007). Therefore, the trial court's exercise of discretion in requiring restitution must be within the boundaries provided in I.C. § 19–5304. *State v. Cheeney,* 144 Idaho 294, 296, 160 P.3d 451, 453 (Ct.App.2007).

▪ One of the purposes of restitution is to obviate the need for victims to incur the cost and inconvenience of a separate civil action in order to gain compensation for their losses. *State v. Parker,* 143 Idaho 165, 167, 139 P.3d 767, 769 (Ct.App.2006); *State v. Waidelich,* 140 Idaho 622, 624, 97 P.3d 489, 491 (Ct.App.2004). The restitution statute evidences a policy favoring full compensation to crime victims who suffer economic loss. *Smith,* 144 Idaho at 692, 169 P.3d at 280. Restitution, however, may be ordered only for actual economic loss suffered by a victim, I.C. §§ 19–5304(1)(a), (2), unless the parties consent to a broader restitution order. *See*

I.C. § 19–5304(9). The statute defines "victim" as "a person or entity, who suffers economic loss or injury *as the result of the defendant's criminal conduct.*" I.C. § 19–5304(1)(e)(i) (emphasis added). The term "economic loss" includes such things as "the value of property taken, destroyed, broken, or otherwise harmed, lost wages, and direct out-of-pocket losses or expenses, such as medical expenses resulting from the criminal conduct." I.C. § 19–5304(1)(a). Thus, there must be a causal connection between the conduct for which the defendant is convicted and the damages the victim suffers. *State v. Shafer,* 144 Idaho 370, 372, 161 P.3d 689, 691 (Ct.App.2007). Except where the parties have consented, a defendant cannot be required to pay restitution for damages stemming from separate, uncharged and unproven crimes. *Id.*

As charged in the information, Schultz was convicted of committing grand theft by exercising unauthorized control and/or making unauthorized transfers of Shayne's credit card accounts and/or bank accounts in an amount exceeding $1,000 between October 2003, and May 2004. Schultz had access to all of the credit cards for which unauthorized transactions were made. All of these transactions, upon which the restitution award was based, were within the scope of the grand theft for which Schultz was charged and convicted.

In this light, we do not read the restitution statute as restrictively as does Schultz. This is not a case where a defendant pled to or was found guilty on an information charging theft of a specific amount of money. *See State v. Aubert,* 119 Idaho 868, 811 P.2d 44 (Ct.App.1991), *overruled on other grounds by State v. Dorsey,* 126 Idaho 659, 662, 889 P.2d 93, 96 (Ct.App.1995). In this circumstance, the state is not precluded from later pursuing restitution for similar unauthorized transactions, within the same time frame and criminal theory alleged in the charging document, on the ground that these individual wrongs were not "adjudicated" or otherwise before the court.

▪ Restitution depends on the existence of the crime for which the offender was

convicted. *See Aubert,* 119 Idaho at 870 n. 5, 811 P.2d at 46 n. 5. Accordingly, we hold that restitution is statutorily available for all unauthorized transactions as a direct result of defendant's criminal conduct and conviction for grand theft in exercising unauthorized control and/or making unauthorized transfers over the victim's accounts during the time frame in question. Given that Schultz makes no challenge to the sufficiency of the state's proof at the restitution hearing, the award of restitution attendant to the grand theft conviction is affirmed.[3]

Schultz was also convicted of four counts of forgery for writing eight specific checks to herself on the victim's checking account, in a total amount of $2,721.45. The district court's order of restitution awarded $2,834.16 for forged checks. Schultz points out this miscalculation and, on appeal, the state concedes a mathematical error of $112.71 in that award of restitution.

## III.

### CONCLUSION

We modify the district court's award of $2,834.16 for forged checks and remand for entry of a corrected restitution order of $2,721.45 and for a total amount of restitution in the sum of $21,858.57.

Chief Judge GUTIERREZ and Judge LANSING concur.

---

**3.** Defendant has pointed out a $14.00 addition miscalculation in the U.S. Bank Check Card category, and will be given credit for the discrepancy.