# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 38808

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2012 Opinion No. 61 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: November 27, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JERRY ALLAN HILL, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

Judgment of conviction on three counts of grand theft, <u>affirmed</u>; order to pay restitution as condition of probation, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for respondent.

_____

WALTERS, Judge Pro Tem

Jerry Allan Hill appeals from the judgment entered upon the jury verdict finding him guilty of three counts of grand theft, Idaho Code §§ 18-2403, 18-2407(1). He asserts that the district court erred in allowing irrelevant testimony by a witness at trial and by awarding the restitution amount sought by the State as a condition of probation. We affirm.

## I.

## PROCEDURAL BACKGROUND

The State charged Hill with three counts of grand theft from a real estate firm, Jordan, Hill and Hall Inc., dba GMAC Real Estate Northwest, of which Hill was a partner along with Brad Jordan and Patrick Hall.[1] The alleged thefts took place over a period of three and one-half

---

[1] The company was formed as a limited liability company (LLC) under former I.C. § 53-601(11) (repealed and replaced with the Idaho Uniform Limited Liability Act, I.C. §§ 30-6-101 *et seq.*, 2008 Idaho Sess. Laws ch. 176 § 1, p. 480).

years between 2004 and 2007. Each charge encompassed a discrete time period within the three and one-half years, i.e., between January 1, 2004, and June 30, 2005; between July 1, 2005, and December 31, 2005; and between January 1, 2006, and May 31, 2007. Each charge alleged that Hill wrongfully took cash or other items from the firm in excess of an aggregate of $1,000 during its respective time period. Hill pled not guilty and the matter proceeded to a jury trial where Hill was found guilty on all counts. The district court sentenced Hill to a unified term of six years on each count, to be served concurrently. After a period of retained jurisdiction, the district court placed Hill on probation for fourteen years. The district court ordered Hill to pay restitution in the amount of $290,768.29 under I.C. § 19-5304(4) as a condition of probation. The district court ordered that the restitution amount be divided equally between Brad Jordan and Patrick Hall. Hill timely appealed.

## II.

## ISSUES

Hill raises two issues on appeal. First, he contends that the district court erred in permitting Brad Jordan to testify to the effect of Hill's conduct on Patrick Hall. Second, he contends that the district court erred in awarding the full amount of restitution sought by the State as a result of Hill's conduct.

## III.

## ANALYSIS

A summary of the facts presented by the State to the jury is integral to resolution of both issues on this appeal. The record shows the State produced testimony and introduced exhibits demonstrating that Hill had made unauthorized withdrawals and expenditures from the corporate business during the time periods alleged. A former bookkeeper testified that the three owners of the company had business credit cards and it was part of her duty to pay the bills for those cards.

The State introduced evidence that the bookkeeper was instructed by Hill to pay expenses charged to his card that were not business expenses, and a spreadsheet of Hill's purchases on the card was introduced to show charges for personal items that were not business expenses. Exhibit 10 was a summary of Hill's company credit card purchase for non-company items. Exhibits 3 through 9 were copies of some of Hill's company credit card purchases coupled with the method of payment from the firm's accounts. Exhibits 3 and 20 show that in June 2005, Hill

2

purchased a power generator for $1,915.94 using the company credit card. The generator was for Hill's personal use. Although it was the bookkeeper's job to pay company bills which included company credit card charges, Hill, not the bookkeeper, wrote the check on the company account that paid for the generator. The purchase was coded as a company expense for "supplies." Exhibit 5 shows that in October 2005, Hill purchased box seats for the Spokane Chiefs sports arena at a cost of $3,000 using the company credit card, an expense that was not authorized by the other partners as a business expense. Hill, not the bookkeeper, wrote the company check that paid for that expense and coded it as "advertising." Exhibit 6 shows that in December 2005, Hill purchased log furniture for $1,100.04, shoes for $179.31, televisions and electronic equipment for $1,316.17 and $1,371.39, and a gas stove for $515.37, using the company credit card. Hill, not the bookkeeper, wrote the company check that paid for those items. The cost of the stove was coded to company occupancy and maintenance; other items were identified as "revolving accounts." Exhibit 7 shows that Hill made a $1,190.69 jewelry purchase in February 2006, using the company credit card and charged other purchases to the same card for $321.97 at the Spokane Chiefs arena during the same time frame. A company check was subsequently issued through an electronic transfer system referred to as "ACH" to pay for the purchases although the bookkeeper testified that she did not write that check, and the payment was coded as "supplies" for the business. Exhibit 8 shows that Hill made a purchase at L.A. Weight Loss in April 2006, for $1,842.75 using the company credit card. The purchase was paid for by an ACH company check, coded to "revolving accounts," and the bookkeeper testified that she did not make the payment. Exhibits 9 and 15 show that in July, August, and September 2006, Hill purchased groceries, personal and household goods for $5,247.57 at a Costco store, using the company credit card. These items were paid for through the ACH method. One of the items purchased, for $3,999.99, was a spa for Hill's home. The purchase was paid for by a company ACH payment and the bookkeeper testified that she did not make this payment.

It was established that Hill was the person responsible for the vending machine in the realty office. The profits from the vending machine were not accounted for in terms of revenue for the company, but according to Exhibit 13, the cost of the supplies for the vending machine in 2005 was $1,487.41, and in 2006 the cost of the supplies for the machine was $1,222.98. A former office assistant and bookkeeper testified that Hill kept the proceeds from the office vending machine even though the products in the machine were purchased with company checks.

3

The bookkeeper testified that Hill wrote company checks to himself that were in addition to his salary and commissions. A former office manager for the business testified about an agreement with Hill that allowed her to buy personal items for herself with money from the business as well as her assistance in issuing company checks for Hill for his personal use.

A certified public accountant (CPA) testified that he was contacted by the other partners of the firm to review the firm's records because they were concerned about money being taken out by one of the partners. His schedule of Hill's transactions and the amount Hill owed the company was introduced into evidence as Exhibit 12. The CPA's analysis covered matters in addition to unauthorized purchases and cash withdrawals made by Hill, including issuing company checks to himself in exchange for "bad" checks written by Hill on his personal bank account, retention of title in his own name of properties purchased by the firm in the development of a real estate subdivision, and repayment with company funds of loans and interest on loans made to Hill by other persons. This analysis concluded that Hill had obtained approximately $332,533.14 from the company through his unauthorized activities. Post trial, it was conceded by the State that $41,764.85 of the CPA's calculation related to a time frame in 2004, outside of the parameters of the information filed against Hill, resulting in the figure of $290,768.29 claimed by the State for restitution required from Hill's thefts within the time frame covered by the jury's verdict of guilty on the three counts of grand theft.

A.     **Relevancy Issue**

Brad Jordan testified as to the nature of the business relationship as well as the company policy on company credit cards and allowable expenditures. He testified to the discovery of Hill's use of business funds for non-business purposes, the audit undertaken of the company books by the CPA, and the eventual collapse of the business itself. Near the conclusion of Jordan's direct examination, he was asked by the prosecutor if he knew the whereabouts of the third partner in the firm, Patrick Hall. Jordan replied that Hall had moved to California and was working for his son. The prosecutor then asked Jordan if he knew what happened to Hall in regard to the collapse of the company. Hill's counsel objected on the basis of relevancy. The prosecutor responded:

> Well, I think it goes to whether or not these two other partners made any money after Mr. Hill was booted out of the company. I think it goes to whether or not either of these two partners had some sort of financial reward as a result of

4

that. I think it goes to the theft itself in establishing what it did to the other two partners.

Counsel for Hill replied: "I don't think any of those issues are relevant to the present proceedings." The district court ruled that the testimony could be of "limited relevance" and permitted a brief inquiry. Jordan then testified:

> Patrick Hall. Well, uh, about a--just about a year ago he moved to California. He uh, ran out of money--he actually ran out of money that previous year and after--well, let's see, I had been putting my money in with Patrick, and when Patrick ran out of money a little before I did and couldn't make payments on his house anymore, he went to California probably just about a year ago, left town and, I kind of got left alone.

On appeal, Hill contends that permitting Jordan to testify to the effect that Hill's conduct had on Hall was irrelevant and was merely an attempt to appeal to passion and sympathy on the part of the jury.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Idaho Rule of Evidence 401, *State v. Byington*, 132 Idaho 597, 603, 977 P.2d 211, 217 (Ct. App. 1998). Evidence that is not relevant is not admissible. I.R.E. 402. Whether evidence is relevant is an issue of law which this Court reviews *de novo*. *State v. Sanchez*, 147 Idaho 521, 211 P.3d 130 (2009); *State v. Lamphere*, 130 Idaho 630, 632, 945 P.2d 1, 3 (1997).

We need not decide, however, whether the district court erred by determining that the testimony sought to be elicited by the question, to which the objection was asserted, was admissible. Even if the district court's ruling was in error, I.R.E. 103 provides that "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . ." Trial error will be deemed harmless if the reviewing court is convinced beyond a reasonable doubt that the error did not contribute to the verdict. *State v. Perry*, 150 Idaho 209, 227, 245 P.3d 961, 979 (2010). In reviewing for harmless error, the court evaluates the potential prejudice from the inadmissible evidence in the context of the evidence presented at trial. *State v. Yager*, 139 Idaho 680, 687, 85 P.3d 656, 663 (2004) (error in failing to suppress evidence was harmless because probative value of evidence improperly admitted at trial was de minimis in light of other evidence properly presented to establish defendant's guilt).

5

The evidence establishing Hill's guilt on each count of the theft charges was extensive, as shown by the summary above. Although Hill offered as an explanation for his conduct that he was simply obtaining recovery of amounts due to him from the business, the district court instructed the jury that it was not a defense to a charge of theft that a defendant retained property of another to offset or pay demands held against the defendant; that it is not a defense to the offense of theft that the defendant intended to restore the property taken; that it is not a defense to the offense of theft that the defendant has an interest therein when the owner/owners also has/have an interest to which the defendant is not entitled. The district court further instructed the jury that it is an affirmative defense to the offense of theft that the property was appropriated openly and avowedly and under a claim of right made in good faith, and that to find the defendant guilty, the jury must conclude beyond a reasonable doubt that the property was not appropriated openly and avowedly and not under a claim of right made in good faith. The correctness of these instructions has not been challenged on appeal.

In the context of the evidence presented at trial, the statement by Jordan regarding the effect of Hill's crimes on Patrick Hall was of minimal value. Jordan's testimony related to the effect of the "collapse of the company." Other testimony showed that there was a period of time between the discovery of the thefts, Hill's ouster from the firm, and the company's collapse. The ultimate cause of the company's collapse, according to Jordan, was the recession, which hit the real estate industry very hard. Because the collapse of the company was not directly tied to Hill's theft, testimony regarding how the collapse of the company affected Hall as one of the other partners had minimal potential for prejudice. Jordan's testimony regarding the whereabouts and activities of former partner Patrick Hall after the collapse of the business was fleeting and insignificant in light of the extensive evidence presented at trial to establish Hill's guilt. Although Hill asserts on appeal the testimony was simply an appeal to passion, there is no claim by Hill or evidence in the record that this brief exchange had any impact on the jury's verdict.

We are convinced from our review of the record that a rational jury would have found Hill guilty of the charged thefts even without the admission of the evidence of what happened to Patrick Hall after the collapse of the company's business. We do not believe that the evidence complained of contributed to the conviction. We conclude that if it was error it was harmless

6

beyond a reasonable doubt, *Perry*, 150 Idaho at 227, 245 P.3d at 979, and is not grounds for reversing Hill's judgment of conviction. I.R.E. 103.

**B.    Restitution Issue**

Following an evidentiary hearing on the State's request for an order of restitution, the district court ordered Hill to pay $145,384.15 to Brad Jordan and $145,384.14 to Patrick Hall as restitution for the economic loss suffered as the result of Hill's criminal conduct. On appeal, Hill challenges the district court's order. He argues that the State failed to prove that certain losses included in the restitution amount resulted from his criminal conduct, and that the district court failed to offset the amount owed by the amount that Jordan and Hall had received from the sale of Hill's home. He also asserts that the district court erred in awarding restitution as requested by the State, because he owned one-third of the firm and therefore should be required to repay only two-thirds of the economic loss established.

The decision whether to order restitution and in what amount is committed to the trial court's sound discretion. *State v. Higley*, 151 Idaho 76, 78, 253 P.3d 750, 752 (Ct. App. 2010); *State v. Card*, 146 Idaho 111, 114, 190 P.3d 930, 933 (Ct. App. 2008); *State v. Smith*, 144 Idaho 687, 692, 169 P.3d 275, 280 (Ct. App. 2007). The trial court's factual findings in relation to restitution will not be disturbed if supported by substantial evidence. *Smith*, 144 Idaho at 692, 169 P.3d at 280. Idaho Code § 19-5304(2) requires that "Unless the court determines that an order of restitution would be inappropriate or undesirable, it shall order a defendant found guilty of any crime which results in an economic loss to the victim to make restitution to the victim. . . . Restitution shall be ordered for any economic loss which the victim actually suffers." One of the purposes of restitution is to obviate the need for victims to incur the cost and inconvenience of a separate civil action in order to gain compensation for their losses. *State v. Schultz*, 148 Idaho 884, 886, 231 P.3d 529, 531 (Ct. App. 2008). The public policy underlying the statute "favor[s] full compensation to crime victims who suffer economic loss." *State v. Bybee*, 115 Idaho 541, 543, 768 P.2d 804, 806 (Ct. App. 1989); *see also State v. Wardle*, 137 Idaho 808, 811, 53 P.3d 1227, 1230 (Ct. App. 2002) (noting that "restitution must be directed toward correcting a harm or paying a cost that results from the defendant's crime").

Determination of economic loss is based upon the civil preponderance of evidence standard. *In re Doe*, 146 Idaho 277, 284, 192 P.3d 1101, 1108 (Ct. App. 2008) (citing I.C. § 19-5304(6)). The court, in determining whether to order restitution and the amount of restitution,

shall consider the amount of economic loss sustained by the victim as a result of the offense, the financial resources, needs and earning ability of the defendant, and such other factors as the court deems appropriate. I.C. § 19-5304(7). There must be a causal connection between the conduct for which the defendant is convicted and the damages the victim suffers. *Schultz*, 148 Idaho at 886, 231 P.3d at 531 (citing *State v. Shafer*, 144 Idaho 370, 372, 161 P.3d 689, 691 (Ct. App. 2007)). To uphold an order of restitution, we must be satisfied that the district court acted within the bounds of its discretion in ordering restitution, not as the result of arbitrary action but through the logical application of proper factors found in subsection (7) of I.C. § 19-5304. *State v. Hamilton*, 129 Idaho 938, 934, 935 P.2d 201, 206 (Ct. App. 1997).

Hill contends the district court erred in awarding the full amount of restitution sought by the State because, he argues, not all of the amounts owing were due to his criminal conduct but instead resulted from "civil disputes" between the partners in the firm. Specifically, he disputes the award of restitution as it relates to the "Delay loan" and the "Mullan and Maverick properties" that related to the real estate subdivision the firm was attempting to develop. These same concerns were raised at the restitution hearing and were addressed by the district court in awarding restitution. The district court did not accept Hill's arguments, instead found the testimony of the certified public accountant (CPA) who had audited the firm's financial records and who had testified at the trial and at the restitution hearing, to be more credible over the testimony of Hill and an accounting witness who testified on his behalf at the restitution hearing. The district court observed that "[t]he jury obviously found [the CPA] credible. The Court specifically makes the same findings on credibility." The district court determined that because Hill's accounting witness based her opinions on what she had been told by Hill, the district court likewise found her testimony incredible. The CPA's findings at the restitution hearing were supported by the admission of fourteen separate exhibits. While Hill argues that the amounts the CPA attributed to Hill as owing the company were not due to Hill's criminal activity, this assertion is unsupported. To the contrary, there is substantial, competent evidence to support the district court's restitution findings. *Smith*, 144 Idaho at 692, 169 P.3d at 280.

Hill further argues that any restitution amount should have been offset by the proceeds of the sale of his home being applied to a loan held by the firm. Hill submits that defendant's exhibits A and B, which were admitted at the restitution hearing, show that the sale of his home resulted in a payment to a local bank on behalf of the firm of Jordan, Hill and Hall, Inc., in an

amount of $216,231.27 and, as such, the restitution amount should have been reduced by that sum. Although there was no dispute as to whether this amount actually went to pay a debt incurred by the firm, there is nothing in the record to support any claim the funds went toward making Brad Jordan and Patrick Hall whole as a result of Hill's criminal conduct. In response to this same assertion at the restitution hearing, the district court concluded that the issue of the sale of the house related to other financial matters respecting the firm's corporate business and was not an appropriate setoff in the restitution determination in the criminal case. The district court's conclusion is supported by substantial, competent evidence and will not be disturbed.

Finally, Hill submits he was entitled to a reduction of the amount of restitution under a theory of unjust enrichment to firm members Brad Jordan and Patrick Hall. Hill argues the restitution amount should be reduced based on his status as a member of the firm who was financially harmed because of his crimes. Because Brad Jordan and Patrick Hall were not each entitled to one-half of the assets of Jordan, Hill and Hall, Inc., Hill argues they would be unjustly enriched by each receiving restitution totaling more than one-third of the amount Hill unlawfully took from the business. The district court found Hill's argument, made without reference to any legal authority, without merit. The district court wrote: "Hill is not a 'victim' under I.C. § 19-5304(1)(e). Thus Hill cannot claim one-third of the amounts owed . . . . This Court finds Hill owes restitution to Brad Jordan and [Patrick] Hall. It is these two individuals alone who suffered the loss at Hill's hands." The district court noted that restitution is an equitable concept, citing *Ellis v. Butterfield*, 98 Idaho 644, 656, 570 P.2d 1334, 1346 (1997), and concluded that Hill was not entitled to restitution with his unclean hands, *Sword v. Sweet*, 140 Idaho 242, 251, 92 P.3d 492, 501 (2004). Due to the fact that Hill could not be a victim and due to the equitable considerations, the district court rejected Hill's position. We agree with the district court's analysis and determinations.

Consistent with the district court's equitable considerations, the Idaho Supreme Court has held that members of a limited liability company, such as was Jordan, Hill and Hall, Inc., owe each other fiduciary duties variously defined as ones of fairness, honesty, good faith, loyalty, trust, and care. *Bushi v. Sage Health Care, PLLC*, 146 Idaho 764, 769, 203 P.3d 694, 699 (2009). A breach of that fiduciary relationship can give rise to liability to an aggrieved member. *Id.* The district court's remedy in ordering restitution to Brad Jordan and Patrick Hall from Hill

9

is consistent with the protection and preservation of the relationship and fiduciary duties that members of LLC entities should expect from each other.

Furthermore, it would be an anomaly for Hill to profit by his own wrongdoing, by receiving credit for one-third of the economic loss caused to the firm by his own misappropriations. Hill has already received the use and benefit of funds and property gained and purchased through his unlawful schemes. The economic loss sustained by the firm as a victim through Hill's misappropriations was $290,768.29, not just two-thirds of that sum. In fixing the amount of restitution, I.C. § 19-5304(2) requires the court "to consider the amount of economic loss sustained by the victim as a result of the offense." Based upon the evidence presented at the trial and the restitution hearing, $290,768.29 was the value of the funds Hill wrongfully took from the firm. We do not read the description of economic loss in the restitution statute to require apportionment of funds unlawfully taken from the firm correlative to any interest of the defendant therein. Because the evidence fully supports the district court's findings and conclusions, we hold that the district court did not abuse its discretion in determining the amounts of the restitution required.

We also reject Hill's suggestion that the restitution order will result in a windfall or unjust enrichment for Jordan and Hall. The restitution order is consistent with the statutory plan to recompense the parties harmed by a defendant's criminal conduct. Jordan and Hall jointly suffered a loss of $290,768.29 from Hill's criminal conduct. He is responsible to them for the full amount. *Accord*, *People v. Day*, 958 N.E.2d 300 (Ill. App. Ct. 2011) (upholding restitution awarded to one member of two-person law firm for entire amount wrongfully taken by other member of firm).

## IV.

## CONCLUSION

Even if the district court erred in admitting evidence of the effect on Patrick Hall of the collapse of the company, the evidence was *de minimis* and harmless in light of the other admissible evidence showing Hill's guilt. The order for restitution was based upon substantial, competent evidence and was not an abuse of the district court's discretion. The judgment of conviction and order for restitution are affirmed.

Judge GUTIERREZ and Judge MELANSON **CONCUR.**

10