**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49030**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Opinion Filed: November 21, 2023** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| TERESA ANN HEAD, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Oneida County. Hon. Javier L. Gabiola, District Judge.

Order of restitution, <u>affirmed</u>.

Waldron Legal, PLLC; Maya P. Waldron, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Andrew V. Wake, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

Teresa Ann Head (Head) appeals from the district court's order of restitution requiring her to pay $24,535.23, jointly and severally with her husband, Jared Head,[1] following a conviction for grand theft. On appeal, Head first argues the district court erred by ordering her to pay the $24,535.00 in restitution because there is not substantial and competent evidence tying her to the economic loss related to motel fees. She further argues the district court abused its discretion in denying the motion to strike testimony, exhibits, and statements from one of the motel residents, S.G., after the State untimely disclosed information regarding S.G.'s competency in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and Idaho Criminal Rule 16. Finally, she asserts the district court erred by exceeding its statutory authority under Idaho Code § 19-5304(8) by ordering joint

---

[1] Jared Head separately appealed his restitution order, and the Idaho Supreme Court issued an opinion in his case in *State v. Head*, 172 Idaho 564, 535 P.3d 188 (2023).

1

and several liability when both defendants were present at the proceedings. For the reasons below, we affirm the district court's order of restitution.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Head and her husband (Jared) managed the Village Inn Motel, owned by Steve and Sally Victor. Head's primary duty was bookkeeping, although she also managed the cleaning staff. As the motel bookkeeper, Head was required to keep daily records of guests staying at the motel, the length of the stay, and the amount and form of payment. This information was recorded on daily sheets. Head was responsible for depositing cash into the motel account once or twice a week.

During this time, T.D., the owner of Bamma Wamma's, a local business, approached Head about putting a small soda shop on the property; Head said she would ask the owners of the Village Inn Motel for permission. Head did not contact the Victors, but approximately one week later, T.D. was told that the Victors agreed to allow the soda shop on the property. T.D. agreed to pay $150 cash each month for renting space on the Village Inn Motel property. The Victors were not a party to the contract and were unaware of the business arrangement. The Village Inn Motel ledger indicated that Bamma Wamma's rental began on September 16, 2017, and was current through May 6, 2018. Rent was paid directly to Head.

In May 2018, after receiving multiple complaints about drug activity, law enforcement officers began watching the Village Inn Motel and its occupants. Law enforcement contacted the Victors to apprise them of the complaints and to ascertain what the Victors knew about the activities at the motel. This contact triggered an investigation into the motel's finances. As part of the investigation, officers executed a search warrant at the motel and interviewed Head regarding the occupants, motel procedure and protocol for checking in guests, and the rent received from Bamma Wamma's. The officers obtained and copied the daily sheets which they later cross-checked against known dates regarding the length of time guests stayed at the motel.

The investigation revealed that the daily sheets did not accurately reflect the amount of fees paid in relation to the length of stay for several guests, including S.G. The daily sheets also did not reflect any rental income received from Bamma Wamma's. Law enforcement learned that Head kept the rental income from Bamma Wamma's and she never informed the Victors of the lease or deposited any of the rental income into the Village Inn Motel account. Further, Head stated she knew that Jared was keeping the room rental fees for some occupants and allowing other

2

occupants to stay for free. Head omitted names of the occupants given free rooms from the daily sheets, did not correctly document the length of stay for some of the occupants who paid cash, and did not record the full amount of cash payments collected. Jared confirmed with law enforcement that Head knew he let people stay for free and he kept the rent money because all the receipts went through her. Head also told law enforcement that she allowed her adult children to stay at the motel free of charge for varying lengths of time. The Victors were unaware of the discounted room rates and that some occupants were given free accommodations; the Victors never gave the Heads permission to do so.

Head was charged with grand theft, I.C. § 18-2407(1)(b), by "wrongfully tak[ing] monies and services in excess of One Thousand Dollars ($1,000) lawful money of the United States from the owner, Sally and Steve Victor, Village Inn Motel, with the intent to deprive another and appropriate to yourself or another." Pursuant to a plea agreement, Head pleaded guilty to grand theft in exchange for the State not filing a persistent violator enhancement. The grand theft charge did not distinguish between loss of revenue from the motel rooms and loss of revenue from the rent from Bamma Wamma's.

The State moved for restitution. At the restitution hearing, Head argued that she only pleaded guilty to the theft of rent from Bamma Wamma's, not the rent from the theft of the motel room fees. She also moved to strike evidence and testimony from the record based on the late disclosure by the State regarding S.G.'s competency, claiming a *Brady* violation resulting in the denial of her due process rights. The district court held that Head was charged with grand theft and the charge did not distinguish between the theft regarding the motel room fees and Bamma Wamma's' rent payments. The district court concluded that Head pleaded guilty to a general charge of grand theft that included all financial losses from the motel, which the district court determined she factually and proximately caused. Implicit in that finding was that Head's allocution did not limit her guilty plea to only the loss of revenue from Bamma Wamma's rental payments. The district court also denied Head's motion to strike testimony from S.G. as it related to the grand theft of motel room fees, finding *Brady* did not apply in civil proceedings. Head was ordered to pay $24,535.23 of restitution, jointly and severally with her husband. Head timely appeals.

3

## II.

## STANDARD OF REVIEW

A trial court's order of restitution is reviewed for an abuse of discretion. *State v. Foeller*, 168 Idaho 884, 887, 489 P.3d 795, 798 (2021). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). Statutory interpretation is a question of law over which this Court exercises free review. *State v. Stover*, 140 Idaho 927, 929, 104 P.3d 969, 971 (2005).

## III.

## ANALYSIS

Head argues the district court improperly awarded restitution because there was no competent and substantial evidence linking her criminal conduct to the economic loss related to the motel room fees; she did not plead guilty to any criminal conduct that caused the economic loss of the motel room fees; the district court improperly declined to strike evidence related to S.G. at the restitution hearing in violation of *Brady* and I.C.R. 16; and the court erred when it ordered her to pay restitution jointly and severally with Jared. In response, the State argues the district court did not err because Head pleaded guilty to a general charge of grand theft that did not distinguish between the motel fees and Bamma Wamma's rent payments and Head admitted she took more than $1,000 from the Victors. The State further argues that substantial and competent evidence exists connecting Head to the theft of the motel room payments. Next, the State asserts the district court properly determined *Brady* and I.C.R. 16 are inapplicable as a basis to strike evidence because a restitution hearing is a civil proceeding, not a criminal proceeding determining guilt. Finally, the State asserts the district court properly interpreted I.C. § 19-5304(8) as providing authority to order joint and several restitution.

### A.     The District Court Did Not Abuse Its Discretion in Ordering Head to Pay Restitution Relating to the Motel Fees

Idaho Code § 19-5304(2) authorizes a sentencing court to order a defendant to pay restitution for economic loss to the victim of a crime. A "victim" is defined as "a person or entity, who suffers economic loss or injury as a result of the defendant's criminal conduct." I.C. § 19-5304(1)(e)(i). "Economic loss" is defined as "the value of property taken, destroyed, broken, or

4

otherwise harmed, lost wages, and direct out-of-pocket losses or expenses, such as medical expenses resulting from the criminal conduct." I.C. § 19-5304(1)(a). The decision of whether to order restitution, and in what amount, is within the discretion of a trial court, guided by consideration of the factors set forth in I.C. § 19-5304(7) and by the policy favoring full compensation to crime victims who suffer economic loss. *State v. Torrez*, 156 Idaho 118, 119, 320 P.3d 1277, 1278 (Ct. App. 2014); *State v. Bybee*, 115 Idaho 541, 543, 768 P.2d 804, 806 (Ct. App. 1989).

The trial court must base the amount of restitution upon the preponderance of evidence submitted by the prosecutor, defendant, victim, or presentence investigator. I.C. § 19-5304(6); *State v. Lombard*, 149 Idaho 819, 822, 242 P.3d 189, 192 (Ct. App. 2010). Thus, the State must prove, by a preponderance of the evidence, a causal relationship between the defendant's criminal conduct and the damages suffered by the victim. I.C. § 19-5304(2); *State v. Corbus*, 150 Idaho 599, 602, 249 P.3d 398, 401 (2011); *State v. Hill*, 154 Idaho 206, 212, 296 P.3d 412, 418 (Ct. App. 2012). Causation consists of actual cause and true proximate cause. *Corbus*, 150 Idaho at 602, 249 P.3d at 401; *State v. Lampien*, 148 Idaho 367, 374, 223 P.3d 750, 757 (2009). Actual cause refers to whether a particular event produced a particular consequence. *Corbus*, 150 Idaho at 602, 249 P.3d at 401; *Lampien*, 148 Idaho at 374, 223 P.3d at 757. A "but for" test of actual cause is used in circumstances where there is only one cause or where two or more possible causes were not acting concurrently. *Corbus*, 150 Idaho at 602, 249 P.3d at 401; *Lampien*, 148 Idaho at 374, 223 P.3d at 757.

The determination of the amount of restitution, which includes the issue of causation, is a question of fact for the trial court. *Corbus*, 150 Idaho at 602, 249 P.3d at 401; *State v. Hamilton*, 129 Idaho 938, 943, 935 P.2d 201, 206 (Ct. App. 1997). The district court's factual findings with regard to restitution will not be disturbed on appeal if supported by substantial evidence. *Corbus*, 150 Idaho at 602, 249 P.3d at 401; *Lombard*, 149 Idaho at 822, 242 P.3d at 192. Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *State v. Straub*, 153 Idaho 882, 885, 292 P.3d 273, 276 (2013). Substantial evidence may support a restitution order even if the evidence is conflicting. *Bettwieser v. New York Irrigation Dist.*, 154 Idaho 317, 322, 297 P.3d 1134, 1139 (2013). Thus, we will not overturn an order of restitution unless an abuse of discretion is shown. *Hill*, 154 Idaho at 211, 296 P.3d at 417.

Head argues the district court abused its discretion when it ordered her to pay restitution for a crime to which she did not plead guilty and for which substantial and competent evidence did not exist. Head alleges that even though the grand theft charge to which she pleaded guilty did not distinguish between the motel room fees and Bamma Wamma's rent, during her allocution, Head only stated facts related to withholding Bamma Wamma's rent, thereby limiting her responsibility for restitution to only that amount. Although Head purports to have only pleaded guilty to the theft of Bamma Wamma's rent, in fact, she pleaded guilty to a general grand theft charge. The plea agreement, signed by Head, included a term that Head would plead guilty to one count of grand theft and, in exchange, the State would not pursue a persistent violator enhancement and would concur with the sentencing recommendation of the presentence investigation report. At the change of plea hearing, Head's attorney indicated that Head was there to enter a plea to one count of grand theft, "and that's the one specifically pertaining to the pop shack." The district court then clarified that there was not a count specific to the theft of the rent from Bamma Wamma's; there was only one general count. The State also noted that the grand theft charge was not limited to the rent from Bamma Wamma's, but instead, included any theft from the motel, including room fees:

| [PROSECUTOR]: | There's only one count of grand theft that includes everything. |
| THE COURT: | That's what I thought, too. The information says that she did wrongfully take money from Steve and Sally Victor, Village Inn Motel. That's the count, one count of grand theft. Is that what she's going to plead to? |
| [DEFENSE]: | Yes, your Honor. |

Head entered a guilty plea to one count of grand theft. The district court then read the charging language from the Information:

| THE COURT: | [O]n or about the 1st of July 2017 through the 7th of June 2018 in the County of Oneida, State of Idaho, you did wrongfully take monies and services in excess of $1,000 lawful money from the owners, Steve and Sally Victor, Village Inn Motel, with the intent to deprive another or appropriate the same to yourself or another. Is that a true statement? |
| DEFENDANT: | Yes, sir. |

The charging language did not specify limiting circumstances or otherwise indicate that Head's plea only applied to Bamma Wamma's' rent. The plea agreement and completed guilty plea questionnaire is silent to the same. Additionally, prior to Head's guilty plea, the prosecutor indicated that the plea included "everything," which referenced both the motel room fees and

Bamma Wamma's rental fees. Head then agreed that she was going to plead to that one count, which included everything. Thus, at the change of plea hearing, Head was aware she was not pleading guilty to only the theft of Bamma Wamma's' rent, but that her guilty plea encompassed theft of motel fees. To the extent there was any confusion about the factual basis, that confusion was dispelled when the prosecutor stated the grand theft charge included all losses, the district court read the charging language which did not distinguish between the motel fees and Bamma Wamma's' rent, and Head agreed it was correct and that she would be pleading guilty to the general charge alleged by the State. Also of note is the theft to which Head pleaded guilty includes dates that preceded the beginning date of Bamma Wamma's agreement with Head. Head pleaded guilty to grand theft for taking money from the Victors beginning July 1, 2017. Bamma Wamma's ledger sheet showed rental payments began September 16, 2017. Therefore, theft after July 1, 2017, but before September 16, 2017, could only be related to the theft of motel room fees. Consequently, Head pleaded guilty to grand theft resulting in economic loss in excess of $1,000 and that necessarily included both Bamma Wamma's rent payments and the motel room fees.

Further, the district court's conclusion that Head's criminal conduct was causally related to the economic loss suffered by the Victors is supported by competent and substantial evidence. In order for a defendant to be ordered to pay restitution, there must be substantial and competent evidence of a causal connection. "Substantial and competent evidence exists if there is evidence in the record that a reasonable trier of fact could accept and rely upon in making the factual finding challenged on appeal." *State v. Ish*, 166 Idaho 492, 509, 461 P.3d 774, 791 (2020).

During the execution of the search warrant, Head and Jared were interviewed. The records seized during the investigation revealed that some individuals stayed at the motel on a long-term basis but were not charged for all of the nights they stayed at the motel. During Head's interview, she explained the process of registering a guest at the motel, which included recording guest information and the payment method on a daily sheet. Credit card deposits were made automatically. Head was told to make cash deposits once or twice a week but if there was no cash to deposit, no deposit would be made. During her interview, Head was asked about S.G., who stayed at the motel from July 2017 through the time of the investigation in June 2018. Head indicated that S.G. was a long-term occupant, he paid with cash, and she thought he paid $600-$800 each month. Head said Jared mostly dealt with S.G., but when S.G. first arrived at the motel, Head recorded his check-in and reported on the daily sheets a charged amount of $305.64 per

7

week. Head's daily sheets show S.G. stayed in the motel July 13-16, 2017, and was charged $49.00 per day. Law enforcement knew S.G. had been at the motel from July 7 to July 30, 2017. The daily sheets Head maintained indicated S.G. checked back in on July 14, 2017, stayed through August 21, 2017, and paid $305.64. Head's pattern of only intermittently listing S.G. on the daily sheets continued through May 31, 2018. However, law enforcement knew S.G. stayed at the motel much more frequently and for longer periods of time than the daily sheets indicated; for example, law enforcement knew that S.G. stayed at the motel until October 2, 2017. Head admitted she knew that Jared usually kept the cash paid by S.G. and that she did not record all the cash collected from S.G.'s stay.

Another individual, J.H., stated he and his wife checked into the motel on March 20, 2018, and stayed there continuously until the search warrant was executed on June 7, 2018. J.H. stated he was charged $305.64 for two weeks of lodging. Jared indicated the weekly rate was "$305, $304"; thus, the amount should have been twice that for a two-week stay. Head's daily sheets indicated J.H. checked in on April 3, 2018, and stayed through April 10, 2018, for which he was charged $305.64 and paid in cash. Head's daily sheets indicate J.H. checked in again on May 15, staying until May 22, 2018, and again was charged $305.64, which was again paid in cash. She stated that her records reflect some of the cash paid by J.H. during his stay and Jared kept the cash "from time to time." Jared confirmed that Head knew he was keeping motel room fees for himself. Jared stated Head was the main bookkeeper for the motel, and whenever she brought up the individuals staying for free, he told her to "just shut up about it." Despite the rebuke, Head's records did not reflect the guests staying for free, the discounted rent, or the extended stays. Head also admitted that she knew she was not permitted to let people stay at the motel for free but, nonetheless, she allowed family members to stay without recording them as guests in the daily sheets or collecting and recording any payment received from them.

Viewing the record as a whole, competent and substantial evidence supports the district court's conclusion that Head knew of the theft of the motel room fees and participated in the theft by omitting relevant information on the daily sheets. Although Head asserts Jared was directly responsible for the theft, there is no distinction between Head's and Jared's culpability. "In Idaho there is no distinction between principals and aiders and abettors, and it is unnecessary the charging document allege any facts other than what is necessary to convict a principal." *State v. Johnson*, 145 Idaho 970, 976, 188 P.3d 912, 918 (2008). The district court determined her culpability was

8

"virtually identical" to Jared's. Thus, whether Head collected the cash payment or simply took affirmative steps to hide the theft is irrelevant in terms of her criminal culpability and her related liability to pay restitution. Head's demonstrated knowledge and affirmative actions to conceal the ongoing theft causally connect her to the crime, and the district court correctly concluded she is responsible for the economic loss suffered by the victims.

The $24,535.23 restitution award stemmed directly from Head's participation in the theft of monies from the motel fees and Bamma Wamma's' rent. The district court did not abuse its discretion in ordering Head to pay for the stolen motel fees as part of her restitution order.

**B.      The District Court Did Not Err in Denying Head's Motion to Strike**

Head's argument on appeal regarding the evidence relating to S.G.'s stay at the motel is predicated on her assertion that the State improperly withheld exculpatory evidence in violation of *Brady* and I.C.R. 16. Further, she maintains that the district court should have stricken evidence as a sanction against the State. Head asserts that regardless of whether the proceeding is criminal or civil, due process requires that a defendant be allowed the opportunity to contest the information on which the restitution award is based. Thus, the district court abused its discretion in concluding that restitution is a civil proceeding to which due process protections do not apply.

This issue was recently resolved in Jared's appeal from his judgment of conviction stemming from his criminal conduct relating to the Village Inn Motel theft. *State v. Head*, 172 Idaho 564, 535 P.3d 188 (2023). In that case, Jared argued that restitution proceedings are a part of the criminal process and, therefore, the rules governing the proceedings should be the criminal rules and standards, including the constitutional right of confrontation. *Id.* at 570, 535 P.3d at 194. As a result, he argued, late disclosure of information material to the competency of a witness resulted in a *Brady* violation when the defendant could not confront the witness and challenge the basis of a restitution award. *Id.*

The Idaho Supreme Court held that "[a] motion for restitution is a civil process even though it is ancillary to a criminal proceeding." *Id.* The Court further held that due process is satisfied when a defendant is provided with notice and an opportunity to be heard and is not a rigid concept. *Id.* at 572, 535 P.3d at 196. Without a showing of a deprivation of rights or a showing of prejudice, late disclosure in a civil proceeding does not give rise to a violation of due process rights in and of itself. *Id.* at 573, 535 P.3d at 197. The Supreme Court's holding in Jared's case is dispositive on Head's claim related to the restitution involving S.G. First, the criminal due process standard

9

requiring disclosure of exculpatory *Brady* material simply does not apply to a restitution proceeding. *Id.* at 571, 535 P.3d at 195. Second, the Supreme Court reiterated the standard to be applied by the district court to consider when determining the appropriate sanction for a discovery violation; "[t]he trial court must [1] balance the equities by comparing the culpability of the disobedient party with the resulting prejudice to the innocent party and [2] consider whether lesser sanctions would be effective." *Id.* at 573, 535 P.3d at 197 (quoting *Erickson v. Erickson*, 171 Idaho 352, 362, 521 P.3d 1089, 1099 (2022)). In criminal cases, "[w]here the question is one of late disclosure rather than failure to disclose, the inquiry on appeal is whether the lateness of the disclosure so prejudiced the defendant's preparation or presentation of his defense that he was prevented from receiving his constitutionally guaranteed fair trial." *State v. Guerra*, 169 Idaho 486, 495, 497 P.3d 1106, 1115 (2021) (quoting *State v. Byington*, 132 Idaho 589, 592, 977 P.2d 203, 206 (1999)).

As in Jared's case, Head was provided notice and an opportunity to be heard in multiple restitution hearings, including those after the disclosure of S.G., and Head cannot show that a violation of her due process rights occurred. Finally, Head failed to meet her burden of demonstrating resulting prejudice due to the late disclosure. Head does not point to any prejudice flowing from the State's late disclosure that prevented her from having a fair hearing. Even without S.G.'s testimony, the State established, by a preponderance of the evidence, a causal connection between Head's involvement in the theft of room fees to include the amount in her restitution order. Further, S.G. was available as a witness, even in his diminished capacity, and Head could have called him to impeach his testimony. Thus, Head fails to show error in the district court's decision to admit the evidence regarding S.G.'s stay at the motel.

## C.     The District Court Had the Authority to Order Joint and Several Liability

Head argues she cannot be jointly and severally liable for the restitution because joint and several liability can only apply when one of the parties is absent. The State argues this is an incorrect reading of the statute and would create anomalous results.

The interpretation of a statute is an issue of law over which we exercise free review. *Aguilar v. Coonrod*, 151 Idaho 642, 649-50, 262 P.3d 671, 678-79 (2011). Such interpretation must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011). It is well established that where statutory

10

language is unambiguous, legislative history and other extrinsic evidence should not be consulted for the purpose of altering the clearly expressed intent of the legislature. *Id.* Only where a statute is capable of more than one conflicting construction is it said to be ambiguous and invoke the rules of statutory construction. *L & W Supply Corp. v. Chartrand Family Trust*, 136 Idaho 738, 743, 40 P.3d 96, 101 (2002). If it is necessary for this Court to interpret a statute because an ambiguity exists, then this Court will attempt to ascertain legislative intent and, in construing the statute, may examine the language used, the reasonableness of the proposed interpretations, and the policy behind the statute. *Kelso & Irwin, P.A. v. State Ins. Fund*, 134 Idaho 130, 134, 997 P.2d 591, 595 (2000). Where the language of a statute is ambiguous, constructions that lead to absurd or unreasonably harsh results are disfavored. *See Jasso v. Camas Cnty.*, 151 Idaho 790, 798, 264 P.3d 897, 905 (2011).

Idaho Code § 19-5304 provides the statutory basis upon which restitution is determined. Head relies specifically upon I.C. § 19-5304(8) in support of her interpretation of the statute. Idaho Code § 19-5304(8) states:

> In determining restitution, where it appears that more than one (1) person is responsible for a crime that results in economic loss to a victim, and one (1) or more of the suspects or defendants are not found, apprehended, charged, convicted or ordered to pay restitution, the court may require the remaining defendant or defendants, who are convicted of or plead guilty to the crime, to be jointly and severally responsible for the entire economic loss to the victim.

Head contends that a plain reading of the statute means that joint and several liability is only available when one party is unavailable. We disagree.

Ordering restitution meets the stated policy goal of making a plaintiff whole and "obviate[s] the need for victims to incur the cost and inconvenience of a separate civil action in order to gain compensation for their losses." *State v. Schultz*, 148 Idaho 884, 886, 231 P.3d 529, 531 (2008). In furtherance of that goal, I.C. § 19-5304(8) gives the court broad authority to assess joint and several liability against each and every defendant, regardless of whether all defendants are present or even charged. A plain reading of the statute indicates that this section is a broad grant of authority to ensure victims are compensated by restitution, not a limitation on the court's authority to require a convicted defendant to pay restitution for the economic loss caused by his or her conduct. When co-defendants work together to cause financial harm, the co-defendants are jointly responsible for making the plaintiff whole. Idaho Code § 19-5304(8) addresses what a court *may* do when one suspect or defendant is not available. It does not state that the *only* time

11

the court may impose joint and several liability is when a suspect or defendant is unavailable. Head impermissibly reads the word "only" into the statute and cites no authority supporting her interpretation. We decline to read words into the statute to limit the trial court's authority to order restitution.

In this case, the district court correctly concluded that awarding restitution to be paid jointly and severally by Head and Jared aligned with the plain language of the restitution statute and the policies of restoring the victims to their prior position. *State v. Smith*, 170 Idaho 800, 823-24, 516 P.3d 1071, 1094-95 (2022) (holding that preponderance of evidence is sufficient to show economic loss warranting restitution); *State v. Foeller*, 168 Idaho 884, 888-89, 489 P.3d 795, 799-800 (2021) (holding Idaho Constitution provides constitutional guarantee that victims are entitled to restitution from person that caused loss); *State v. Cottrell*, 152 Idaho 387, 397, 271 P.3d 1243, 1253 (Ct. App. 2012) (reiterating primary policy behind criminal restitution in Idaho favors full compensation to crime victims who suffer economic loss).

The district court was within its discretionary authority to require joint and several liability for restitution after determining Head and Jared were both responsible for the economic losses sustained by the Victors as a result of Head's and Jared's criminal conduct. Therefore, the district court did not abuse its discretion in awarding restitution.

## IV.

## CONCLUSION

The district court did not err in ordering Head to pay $24,535.23 in restitution jointly and severally with Jared or in denying Head's motion to strike. The district court's order of restitution is affirmed.

Chief Judge LORELLO and Judge GRATTON **CONCUR**.