IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 36784

STATE OF IDAHO,                                      )
                                                     )    2010 Opinion No. 85S
        Plaintiff-Respondent,            )
                                                     )    Filed: December 21, 2010
v.                                                   )
                                                     )    Stephen W. Kenyon, Clerk
BRENT W. HIGLEY,                                     )
                                                     )    SUBSTITUTE OPINION
        Defendant-Appellant.             )    THE COURT'S PRIOR OPINION
                                                     )    DATED DECEMBER 15, 2010 IS
                                                     )    HEREBY WITHDRAWN
_____             )

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Jerome County. Hon. John K. Butler, District Judge.

Order of restitution, affirmed.

Molly J. Huskey, State Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Brent W. Higley was convicted of conspiracy to commit robbery for his role in the robbery of a Maverik convenience store. He appeals from the district court's order of restitution following his guilty plea. We affirm.

## I.

## FACTS AND PROCEDURE

Robert Hainline worked full-time at Wal-Mart and also as a clerk at a Maverik convenience store. During a shift at Maverik, he was confronted by a man armed with a gun who demanded all of the money from the till. After a few days off, Hainline returned to work, but after one day found that he could not "focus" and that he "panicked" whenever a customer entered. He sought the assistance of a counselor, who recommended that he quit his job at

1

Maverik because of the symptoms he was experiencing that were consistent with post-traumatic stress disorder.

Hainline followed the counselor's advice, but continued to work his full-time job at Wal-Mart. Approximately two and a half months later Hainline was able to find a job at Burger King for a slightly lower hourly wage than he had received at Maverik. He continued to work both jobs for approximately two and a half months until he moved to another city.

Based on his role in the Maverik robbery, Higley pled guilty to conspiracy to commit robbery. He was sentenced to a period of imprisonment and ordered to pay restitution. Pertinent to this appeal, Hainline requested restitution for lost wages for the period after he stopped working at Maverik and began working at Burger King. After a hearing during which Higley objected to an award of restitution, the court granted Hainline's request and ordered Higley to pay Hainline a total of $2,665.88. Higley now appeals the order of restitution.

## II.

## ANALYSIS

Higley contends that the district court erred in finding that Hainline's lost income was "economic loss" as defined in Idaho Code § 19-5304 and awarding restitution of approximately $2,700. Specifically, Higley contends restitution was not appropriate under the statute because Hainline testified that he had quit his job based on "purely emotional distress" and that any loss suffered by Hainline was in an effort to prevent future harm.

Orders for the payment of restitution to crime victims are governed by I.C. § 19-5304. *State v. Gonzales*, 144 Idaho 775, 777, 171 P.3d 266, 268 (Ct. App. 2007); *State v. Taie*, 138 Idaho 878, 879, 71 P.3d 477, 478 (Ct. App. 2003). The decision whether to require restitution is committed to the trial court's discretion, whose findings of fact will not be disturbed if supported by substantial evidence. *State v. Schultz*, 148 Idaho 884, 886, 231 P.3d 529, 531 (Ct. App. 2008); *State v. Smith*, 144 Idaho 687, 692, 169 P.3d 275, 280 (Ct. App. 2007). It is generally recognized, however, that courts of criminal jurisdiction have no power or authority to direct reparations or restitution to a crime victim in the absence of a statutory provision to such effect. *Schultz*, 148 Idaho at 886, 231 P.3d at 531; *Gonzales*, 144 Idaho at 777, 171 P.3d at 268; *State v. Richmond*, 137 Idaho 35, 37, 43 P.3d 794, 796 (Ct. App. 2002). Therefore, the trial court's exercise of discretion in requiring restitution must be within the boundaries provided in I.C.

2

§ 19-5304. *Schultz*, 148 Idaho at 886, 231 P.3d at 531; *Gonzales*, 144 Idaho at 777, 171 P.3d at 268; *State v. Cheeney*, 144 Idaho 294, 296, 160 P.3d 451, 453 (Ct. App. 2007).

> Restitution may be ordered only for actual economic loss suffered by a victim. I.C. §§ 19-5304(1)(a), (2). "Economic loss" is defined as follows: "Economic loss" includes, but is not limited to, the value of property taken, destroyed, broken, or otherwise harmed, lost wages, and direct out-of-pocket losses or expenses, such as medical expenses resulting from the criminal conduct, but does not include less tangible damage such as pain and suffering, wrongful death or emotional distress.

I.C. § 19-5304(1)(a). It includes necessary expenses or losses that the victim incurred in order to address the consequences of the criminal conduct. *Gonzales*, 144 Idaho at 778, 171 P.3d at 269.

One of the purposes of restitution is to obviate the need for victims to incur the cost and inconvenience of a separate civil action in order to gain compensation for their losses. *Schultz*, 148 Idaho at 886, 231 P.3d at 531; *Gonzales*, 144 Idaho at 778, 171 P.3d at 269; *State v. Parker*, 143 Idaho 165, 167, 139 P.3d 767, 769 (Ct. App. 2006); *State v. Waidelich*, 140 Idaho 622, 624, 97 P.3d 489, 491 (Ct. App. 2004). However, the statute disallows restitution for noneconomic damages that might be available in a civil lawsuit, such as pain and suffering, wrongful death, emotional distress, and the like. *Gonzales*, 144 Idaho at 778, 171 P.3d at 269; *Parker*, 143 Idaho at 167, 139 P.3d at 769.

The district court ordered restitution for Hainline's lost wages between the date that Hainline quit his job at Maverik and when he found a new job at Burger King. In doing so, the court stated:

> The court's understanding of the testimony is that Mr. Hainline, because of the crime itself, being confronted with a firearm in an armed robbery, that that created post traumatic stress disorder for him. He attempted to return to work. He was unable to work his job following that incident.
> On the recommendation of a counselor . . . [Mr. Hainline] terminated his job at Maverik and sought additional employment at Burger King, which was at an income less than what he was earning at Maverik.
> The court does believe that the lost income directly resulting from the recommendations of [the counselor] are economic loss. It is not something that happened in the future. It's something that is happening in the present. It's a reaction that the victim is experiencing as a result of the event in question.

The court, however, denied restitution for lost wages for the period of time that Hainline was unemployed following his move to Rupert, deciding that "[t]hat income could very well fall

within the statements of *Gonzales* that it relates to a future event, not something that's occurred presently."

The evidence regarding the counselor's assessment and recommendation was in the form of a letter from Hainline's counselor to the deputy prosecuting attorney, wherein she stated:

> Mr. Hainline had an assessment counseling session with me in late January 2008 just days after he was the victim of an armed robbery while he was clerking at the Jerome Maverik store. Among other aspects of the robbery, he reported that a weapon had been pointed directly at him during the incident causing him great fear and, as a result, he kept reliving the incident.
>
> Mr. Hainline presented with symptoms consistent with post traumatic stress disorder. Directly after the incident he kept clerking at the Maverik and the robber had not been apprehended. This was compounding his symptoms. Given this situation, the most reasonable course of action to ameliorate his post traumatic stress was for him to remove himself from the situation where the terrifying incident occurred. Therefore, a recommendation that he leave his employment at Maverik and seek another job was made.

Higley's primary argument on appeal is that Hainline's lost wages were due to a decision that Hainline made subsequent to the crime in order to prevent similar crime from occurring again--in other words it was a preventative step--which is not reimbursable under the statute pursuant to *Waidelich*, 140 Idaho at 624, 97 P.3d at 491, and *Gonzales*, 144 Idaho at 778, 171 P.3d at 269. In *Waidelich*, the victim sought restitution for the cost of boarding her puppies during the day because she was afraid that the defendant, who had been convicted of previously attempting to steal them, would return to take them. While recognizing that the victim's fear of a future violation may have been valid, we noted that the victim's own assessment of actions necessary to prevent future harm was not a legal basis to sustain the restitution order. *Id.* at 624, 97 P.3d at 491. Accordingly, we held that the cost of preventative measures taken by a victim after a crime are not direct out-of-pocket expenses that are reimbursable under the restitution statute. *Id*.

In *Gonzales*, the defendant was convicted of unlawful penetration by use of a foreign object, and his victim requested restitution for vocational school tuition and supplies that she forfeited after the crime because she felt afraid to return to school fearing that another similar incident would occur. We noted that the victim did not state that she was unable to attend the program because of being physically injured by the crime or because she was busy meeting with police or testifying in the case. We concluded that like the victim in *Waidelich*, the *Gonzales*

4

victim incurred the expenses because of her efforts to prevent possible future harm and therefore they were not subject to restitution under the statute. *Id.* at 779, 171 P.3d at 270.

Higley contends that where the record shows that Hainline suffered no physical injuries and that he was able to maintain full-time employment at Wal-Mart during the period in question, the expense at issue was incurred because Hainline, like the victims in *Gonzales* and *Waidelich*, was attempting to "prevent possible future harm." Upon examination of the record, we conclude that this case is distinguishable from *Gonzales* and *Waidelich*. Despite Higley's attempt to characterize Hainline's action as preventative, the letter submitted by his counselor indicates that she recommended he quit his job based on the symptoms he was experiencing *at the time* (including "reliving" the incident), not upon a desire to help him dissolve any fear that such an incident would happen again in the future. In addition, Hainline testified that he quit because he "worked there one day and I couldn't focus. . . . Every time the--a customer came in, I panicked and I couldn't--I just couldn't work there anymore." Thus, he testified as to an *inability* to continue work at Maverik, as distinguished from our recognition in *Gonzales* that the victim had never indicated her inability to continue school.

Higley also contends that the district court's finding that Hainline's inability to return to work was due to post-traumatic stress disorder was "inaccurate" because there was "no evidence that Mr. Hainline was actually diagnosed with, or suffered from, post traumatic stress disorder." Specifically, Higley points out that counselor's letter only indicated that Hainline had presented with symptoms "consistent" with post-traumatic stress disorder and that determination had been made after only one meeting. As we noted above, a court's findings of fact will not be disturbed if supported by substantial evidence and we conclude here that there was sufficient evidence to support such a finding. The record establishes that Hainline began exhibiting symptoms immediately following his return to work after being robbed at gunpoint, that he sought counseling as a result, and that the counselor attributed his symptoms to the robbery incident and recommended that he quit his job due to those symptoms. That the counselor only saw him once and described his symptoms as merely "consistent with" post-traumatic stress disorder are not facts which render the court's finding unsupported by substantial evidence.[1]

---

[1]     Higley also argues that restitution should not have been ordered because there was no evidence in the record whether there were other steps short of quitting his job--*i.e.*, taking

We conclude that restitution for lost wages in this instance was appropriate under the restitution statute, and the district court's restitution order was not an abuse of discretion. The order of restitution is affirmed.

Judge GRATTON and Judge MELANSON, **CONCUR.**

---

additional days off and continuing counseling--that Hainline could have taken in order to remain employed at Maverik. However, Higley does not cite any authority for the proposition that such an inquiry is relevant to whether restitution is appropriate under the statute and thus we will not address his argument on appeal. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) (holding that a party waives an issue on appeal if either authority or argument is lacking).