IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 39903

STATE OF IDAHO,                              )
                                             )        2013 Opinion No. 63
      Plaintiff-Respondent,              )
                                             )        Filed: November 26, 2013
v.                                           )
                                             )        Stephen W. Kenyon, Clerk
DONALD LEONARD HOUSER,                       )
                                             )
      Defendant-Appellant.               )
                                             )

Appeal from the District Court of the Third Judicial District, State of Idaho, Washington County. Hon. Susan E. Wiebe, District Judge.

Restitution order affirmed in part, vacated in part, and case remanded.

Sara B. Thomas, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Daphne J. Huang, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Donald Houser was convicted of aggravated assault on his brother, Douglas Houser. The trial court ordered Donald to pay restitution to Douglas. On appeal, Donald asserts that the restitution award is excessive because some of Douglas's lost wages were not caused by the assault and because some categories of Douglas's claims were not awardable under the governing statute.

I.

BACKGROUND

Donald was convicted of aggravated assault for threatening his brother with a hunting knife. The State requested an award of restitution to Douglas for wages lost due to Douglas's attendance of court proceedings in the case. Douglas submitted a record of the days he claimed to have taken off work to attend the proceedings. It indicated that Douglas missed work upon attending nine proceedings: (1) an arraignment on August 23, 2011; (2) a bond hearing on

1

August 31, 2011; (3) a preliminary hearing on September 6, 2011; (4) the felony arraignment on September 12, 2011; (5) a no-contact hearing on September 26, 2011, a civil matter wherein Donald's wife sought an order for protection from Douglas; (6) a pretrial conference on November 14, 2011; (7) a status conference on December 12, 2012; (8) an additional status conference on January 23, 2012; and (9) both trial days, February 14-15, 2012. Douglas also indicated that he did not go to work the day after the incident, August 22, 2011, before Donald was taken into custody, and that he took two additional days off work because he was emotionally shaken by the assault. The total was 120 hours off of work which, at Douglas's claimed wage rate of $10.40 per hour, resulted in $1,248 in lost wages.

At a restitution hearing, Douglas testified that he took an entire day off of work for each court proceeding he attended, although most of the hearings were quite short in length, with many being less than an hour long. When asked why he took off the entire day, Douglas said that his employer told him to take the whole day so as to avoid paying for transportation costs associated with going back and forth from work to court.

Donald argued that Douglas was not entitled to any restitution as to several of the days and only limited restitution as to all but the trial days. Donald argued that: (1) Douglas's presence was not required at most of the hearings; (2) while Douglas might be entitled to some time for some of the hearings he attended, he was not entitled to a whole day for short hearings; (3) the three days on which Douglas neither attended work nor a court hearing were not compensable under the statute because that would essentially grant restitution for emotional distress; (4) Douglas did not actually attend the November 14, 2011, pretrial conference; and (5) the no-contact order hearing was essentially unrelated to the alleged criminal behavior.

The trial court rejected most of Donald's objections and awarded restitution for most of the claimed lost wages. The district court denied restitution for the two days Douglas was emotionally shaken after Donald was arrested, but did award restitution for the day after the incident when Donald had not yet been arrested. The district court also denied the restitution for the day Douglas attended the hearing on the request for a no-contact order. The trial court concluded that wage losses for the other days were covered by the restitution statute. As to Douglas taking entire days off work to attend short hearings, the trial court appears to have accepted the argument that the travel costs would have been burdensome. The court also added that, from Douglas's perspective, it would not be clear how long each proceeding might take and

2

thus it was reasonable to take off an entire day. The amount ultimately awarded was $936 for ninety hours of time loss.

On appeal, Donald argues that the trial court erred by granting restitution for the day after the criminal conduct when Donald had not yet been arrested (August 22, 2011); that the court erred in finding that Douglas attended the pretrial conference on November 14, 2011; that restitution ought not have been granted for proceedings that Douglas was not required to attend because where a victim's attendance at a hearing is optional, it is not caused by the criminal conduct and thus not covered by the restitution statute; and that restitution is inappropriate for hours when Douglas took off entire days rather than attend work when he could because this also amounted to a choice and was not caused by his criminal behavior.

## II.

## ANALYSIS

Idaho Code § 19-5304(2) authorizes the sentencing court to order a defendant to pay restitution for economic loss to the victim. "Economic loss" includes, among other things, lost wages and direct out-of-pocket losses or expenses, such as medical expenses, resulting from the criminal conduct, but it excludes "less tangible damage such as pain and suffering, wrongful death or emotional distress." I.C. § 19-5304(1)(a). The sentencing court has discretion to determine whether restitution is appropriate and, if so, to set the amount. *State v. Hill*, 154 Idaho 206, 211, 296 P.3d 412, 417 (Ct. App. 2012); *State v. Higley*, 151 Idaho 76, 78, 253 P.3d 750, 752 (Ct. App. 2010); *State v. Card*, 146 Idaho 111, 114, 190 P.3d 930, 933 (Ct. App. 2008). On appeal, the factual findings of the sentencing court will not be disturbed if they are supported by substantial evidence. *State v. Straub*, 153 Idaho 882, 885, 292 P.3d 273, 276 (2013); *Hill*, 154 Idaho at 211, 296 P.3d at 417. Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Straub*, 153 Idaho at 885, 292 P.3d at 276; *Kinney v. Tupperware Co.*, 117 Idaho 765, 769, 792 P.2d 330, 334 (1990).

To justify an award of restitution, the State must show a causal relationship between the defendant's criminal conduct and the damages suffered by the victim. I.C. § 19-5304(7); *State v. Corbus*, 150 Idaho 599, 602, 249 P.3d 398, 401 (2011); *Hill*, 154 Idaho at 212, 296 P.3d at 418. This rule flows from the restitution statute itself, where "victim" is defined to include a person who suffers economic loss or injury "as the result of the defendant's criminal conduct," and I.C. § 19-5304(1)(e)(i), where economic loss is defined to include lost wages "resulting from the

criminal conduct." I.C. § 19-5304(1)(a). In determining whether the requisite causal nexus exists, the court is to apply principles from the common law of torts including standards of actual and proximate cause. *Corbus*, 150 Idaho at 602, 249 P.3d at 401; *State v. Nienburg*, 153 Idaho 491, 495, 283 P.3d 808, 812 (Ct. App. 2012). Actual cause refers to whether "a particular event produced a particular consequence" and is a "but for" test. *State v. Lampien*, 148 Idaho 367, 374, 223 P.3d 750, 757 (2009). Proximate cause focuses on the foreseeability of the injury, requiring the court to determine whether the injury was "so highly unusual that we can say, as a matter of law that a reasonable [person], making an inventory of the possibilities of harm which his conduct might produce, would not have reasonably expected the injury to occur." *Id*. (quoting *Cramer v. Slater*, 146 Idaho 868, 875, 204 P.3d 508, 515 (2009)). This causation must be shown by a preponderance of the evidence. I.C. § 19-5304(6); *Hill*, 154 Idaho at 212, 296 P.3d at 418; *In re Doe*, 146 Idaho 277, 284, 192 P.3d 1101, 1108 (Ct. App. 2008).

An extant causal chain linking the defendant's criminal conduct to an economic loss may be broken by an intervening, superseding cause. *Corbus*, 150 Idaho at 602, 249 P.3d at 401. Such an intervening, superseding cause "must be an unforeseeable and extraordinary occurrence." *Id*. at 602-03, 249 P.3d at 401-02. The defendant remains liable if either the possible consequence might reasonably have been contemplated or the defendant should have foreseen the possibility of harm of the kind that could result from his act. *Id.* at 603, 249 P.3d 398, 402 (2011) (quoting *Lampien*, 148 Idaho at 375, 223 P.3d at 758).

Applying these principles, we examine each of Donald's claims of error.

## A.     Lost Wages for August 22, 2011

As to August 22, 2011, the day after the assault but before Donald was taken into custody, Donald argues that the award was improper because it constituted restitution for emotional distress, which is prohibited by I.C. § 19-5304(1)(a). The State does not address whether such an award would be proper but, rather, argues that the district court did not award restitution for that day. The State is mistaken. In its oral ruling, the district court expressly included restitution for that day. Further, the written restitution order awarded $936 for lost wages, and if the time for August 22 was not included, the court's calculation of $936 would be incorrect. Therefore, we must consider Donald's challenge to the propriety of the award.

The evidence at the restitution hearing included an exhibit prepared by Douglas listing his days of time off. It indicated that he missed work on August 22 because he was "emotionally

4

shaken" and that Donald had not yet been apprehended. At the hearing, Douglas testified that in addition to being emotionally shaken, he felt he needed to stay home to protect his wife. He also said he felt unable to perform his work on that day. Donald argues that this evidence establishes that the restitution claim for this day constitutes an award for emotional distress, which the restitution statute expressly excludes from the category of damages compensable as restitution.[1]

Donald's argument is without merit. Idaho Code § 19-5304(1) expressly authorizes restitution for lost wages, and the measure of restitution here was for wages lost as a result of missing one day of work. Emotional distress damages, by contrast, are compensation for the intangible damage of emotional suffering. Examples in Idaho law include damages for emotional suffering of a widower caused by a health insurer's bad faith denial of coverage, which drew widower into a prolonged dispute when he was grieving the loss of his wife, *Walston v. Monumental Life Ins. Co.*, 129 Idaho 211, 218-20, 923 P.2d 456, 463-65 (1996); and damages for emotional distress arising from physical, sexual, and emotional abuse inflicted by domestic partner, *Curtis v. Firth*, 123 Idaho 598, 606, 850 P.2d 749, 757 (1993). Like damages for physical pain and suffering, emotional distress damages are not compensation for out-of-pocket expense and are not measurable or subject to precise valuation.[2] In the present case, Douglas was not granted any emotional distress damages as part of the restitution award.

---

[1] Idaho Code § 19-5304(1)(a) defines "economic loss" as follows:
   (a) "Economic loss" includes, but is not limited to, the value of property taken, destroyed, broken, or otherwise harmed, lost wages, and direct out-of-pocket losses or expenses, such as medical expenses resulting from the criminal conduct, but does not include less tangible damage such as pain and suffering, wrongful death or emotional distress.

[2] Because non-economic damages are excluded, restitution under I.C. § 19-5304 may not make all crime victims whole or operate as a full substitute for a civil action. *See State v. Straub*, 153 Idaho 882, 890, 292 P.3d 273, 281 (2013); *State v. Waidelich*, 140 Idaho 622, 624, 97 P.3d 489, 491 (Ct. App. 2004). The limitations within the statute are based largely upon prudential concerns regarding the efficient administration of justice in criminal cases and fairness toward defendants. In *Straub*, 153 Idaho at 890, 292 P.3d at 281 (2013), the Court stated that a more comprehensive restitution statute might "draw to a standstill an already overburdened criminal court process"; *see also Waidelich*, 140 Idaho at 624, 97 P.3d at 491 (noting that a victim's response to the feeling of violation created by criminal conduct could create an unfair financial burden on criminal defendants).

5

Our conclusion that the lost wages award for August 22 was for economic loss and not emotional distress does not entirely answer our inquiry, however, for not all financial loss that is traceable to a defendant's crime can be compensated with a restitution award. As explained above, the victim's loss must be proximately caused by the defendant's criminal conduct. Therefore, in some circumstances, economic loss occasioned by the victim's emotional response to the crime may be too attenuated to warrant restitution. Three of our decisions address proximate causation in relation to economic loss occasioned by the victim's psychological response to the crime. In *State v. Waidelich*, 140 Idaho 622, 97 P.3d 489 (Ct. App. 2004), the defendant had attempted to break into a home and steal a valuable puppy which was one of a litter that the owner was raising for the purpose of sale. For eight weeks after the attempted burglary, the victim boarded her litter of puppies during periods while she was at work out of concern that the defendant or his accomplices would return to steal the puppies, and she sought restitution for this boarding cost. Although we recognized that the victim's fear of a future violation may have been reasonable, we pointed out that a victim's own assessment of actions necessary to prevent future harm was not a legal basis for a restitution order. Accordingly, we held that the costs of preventative measures taken by a victim out of fear of a future crime are not the sort of direct out-of-pocket expenses that are reimbursable under the restitution statute. *Id.* at 624, 97 P.3d at 491.

Later, in *State v. Gonzales*, 144 Idaho 775, 171 P.3d 266 (Ct. App. 2007), we considered the restitution claim of the victim of a sex crime. She requested restitution for vocational school tuition and supplies that she forfeited after the crime because she was afraid to return to school, fearing that another similar incident would occur. We noted that the victim did not assert that she was unable to attend the program because she was physically injured by the crime or was busy meeting with police or testifying in the case. We concluded that like the victim in *Waidelich*, the victim in *Gonzales* incurred the losses as a result of steps she took to prevent possible future harm and therefore they were not compensable through an award of restitution. *Id.* at 779, 171 P.3d at 270. Although we did not rely upon it in the *Gonzales* opinion, we also note that the victim's loss there was not for any expenditure made after the crime and in response to it, but for tuition paid and supplies purchased before the crime occurred. This loss was therefore indirect, stemming from fear of another crime.

6

We arrived at a different result in *Higley*, where the victim was a clerk at a convenience store when a robbery occurred. The robber demanded that the victim give him all of the money in the cash register. After taking a few days off, the victim attempted to return to work. After one day, however, he found that he could not focus and panicked whenever a customer entered the store. He felt that he "just couldn't work there anymore." Because of his distress, he consulted a counselor who advised him to quit his job and noted that his symptoms were consistent with post-traumatic stress disorder. The victim did resign from the job and consequently lost wages. The trial court awarded restitution for the victim's missed work. The defendant appealed, arguing that the victim's lost wages were due to the victim taking a preventative step and therefore not awardable under our analysis in *Waidelich* and *Gonzales*. We affirmed the restitution order in *Higley*, however, and distinguished the two prior cases. We noted that Higley's victim was not attempting to avoid future harm. Rather, he was unable to continue work because of the psychiatric symptoms he was contemporaneously experiencing as an enduring result of the defendant's crime. The evidence showed that his counselor recommended that he quit his job based upon the symptoms that he was experiencing at the time, including "reliving" the incident. We distinguished *Gonzales* because the victim there did not claim to be unable to return to classes but incurred the indirect loss at issue because of her efforts to prevent possible future harm. *Higley*, 151 Idaho at 79-80, 253 P.3d at 753-54.

The claim at issue here is similar to that in *Higley*. Douglas explained that he took the day off because he was emotionally shaken and felt unable to work. This evidence is sufficient to support a finding that the wage loss was proximately caused by Donald's crime. Although Douglas testified to additional reasons for wanting to stay home that day, including to protect his wife while Donald was still at large, those additional reasons do not invalidate an otherwise compensable claim. Accordingly, the trial court did not err by granting restitution for Douglas's lost wages on August 22, 2011.

**B.      Lost Wages for November 14, 2011**

Donald argues that the State did not establish that Douglas actually attended a court proceeding on November 14, 2011. In his written record of lost wages, Douglas recorded that he went to a pretrial conference on that day. Likewise, on direct examination, Douglas stated that he had been to the pretrial conference. On cross-examination, Douglas was asked, "Isn't it true that you actually didn't appear on November 14th? Various people have said you were not in the

courtroom that day." Douglas responded, "I don't remember whether I was here or not. I believe I went to every hearing." The trial court did not make an express factual finding that Douglas was at the pretrial conference on November 14, 2011, but did award restitution for that day.

We conclude that the trial court's implicit determination was supported by substantial evidence. Douglas's statement that he had attended the pretrial conference, along with the evidence that he intended to go to every hearing and did attend every other court hearing, support the trial court's implicit finding that Douglas attended the November 14, 2011, pretrial conference. The question asked by counsel, which assumed that some people indicated Douglas was not at the hearing, was not evidence, and nothing else was presented to controvert Douglas's recollection.

## C.    Lost Wages for Attending Other Court Proceedings

Donald next contends that the district court erred in awarding restitution for days when Douglas attended a hearing but was not subject to a subpoena or otherwise required to participate in the proceedings. He argues that Douglas's choice to attend when it was not necessary should be treated as an intervening, superseding cause. We are not persuaded. As noted above, an intervening, superseding cause must be extraordinary and unforeseeable. It may be true that most crime victims do not choose to attend every hearing, but it is not unforeseeable. Idaho law requires that a victim be notified of such proceedings, I.C. § 19-5306(1)(d), and permits the victim to be present at *all* criminal justice proceedings. I.C. § 19-5306(1)(b). Implicit in this legislative scheme is a recognition that some victims will wish to attend these proceedings and actually attend them. A crime victim may want to be present at any proceeding that substantially impacts the case, the victim's relationship with the perpetrator, or any further risk to the victim.

Nor do we believe that a distinction should be made based upon the importance of proceedings. Doing so would be substantially unfair to crime victims who may not be legally sophisticated. Their lack of knowledge about what will occur at each stage of the criminal process may lead them to attend some proceedings that are of little significance. In addition, the importance of a proceeding to the victim may be distinguishable from the importance of a proceeding to the disposition of a case. For example, the effect of a bond argument on the disposition of a case, if any, is limited; but the amount of bond may have an enormous effect on the victim's sense of security. Therefore, we hold that Douglas's choice to attend most, if not

8

all, of the proceedings was not an intervening, superseding cause that severed the causal link between Donald's criminal behavior and Douglas's loss of wages.

Donald next asserts that the trial court erred by finding that the crime caused Douglas to miss entire work days when the court proceedings were brief. The district court held that restitution for full days was justified because of the distance that Douglas was required to travel to attend the proceedings and the uncertainty regarding how long any particular proceeding might last. We do not find substantial evidence to support the finding regarding the burdensomeness of travel. The only evidence regarding travel distances concerned the distance from Douglas's home to his workplace, twenty-three miles. That distance is irrelevant, however, to whether Douglas should have travelled to and from his workplace to attend court. Douglas would have had to drive the distance between his home and work regardless of Donald's criminal conduct. The relevant inquiry is the distance between the courthouse and Douglas's workplace. No evidence of that distance was presented. Accordingly, the trial court's determination that it would have been burdensome for Douglas to travel between the two places was not supported by substantial evidence.

The final issue is whether Douglas's uncertainty about the precise time when certain court proceedings would begin and end justifies allowance of restitution for entire days off work. The district court found that this uncertainty justified Douglas's taking a full day off work even when the court proceedings were quite brief. The district court was correct in recognizing that the precise time of day when a trial court will take up a particular matter is often unpredictable. Trial courts often schedule hearings or status conferences in multiple cases for the same time on a particular day and work through them seriatim. A victim wishing to attend one of those proceedings will necessarily have to arrive at the time scheduled and then wait until the court takes up the matter of interest to that individual. Consequently, a victim who attends court proceedings will necessarily miss work for longer than the duration of the proceeding in his or her case. However, this uncertainty factor justifies presence at the courthouse only before a proceeding begins, not after it ends. For example, an individual wishing to attend a hearing that is scheduled for 9 a.m., together with numerous other hearings, may have to wait from 9 a.m. to 11 a.m. before his or her case is taken up by the court; but that would not necessarily justify taking the remainder of the day off work if the hearing was concluded by noon. We do not suggest that the individual should be expected to go to the workplace when only brief intervals at

9

work would be possible preceding or following a court proceeding. Reasonableness is the touchstone. Nevertheless, in the absence of evidence of a justification, a court may not presume that loss of an entire work day is justified for every attendance at a hearing regardless of its duration or time of day. Nor may a court hypothesize justifications without some evidentiary basis.

The record in this case does not support the district court's finding that uncertainty about hearing times caused Douglas to take entire days off of work. The evidence shows that he did not spend entire days at the courthouse, except perhaps during the trial. The limited evidence in the record indicates that on some days Douglas spent as little as an hour at the courthouse. In addition, there was no evidence showing that Douglas's employer would not allow him to return to work. There are types of employment in which an employer would reasonably grant his employee a full day off work, but not part of the day, as where a period of temporary absence requires that the employer have an alternate employee come to the workplace and cover that portion of the work. In such circumstance, it may not be practical to have the alternate employee work for only an hour or two. Conversely, for many jobs an employee's temporary absence does not disrupt the workplace nor necessitate that an alternate employee cover for the missing employee. Not returning to work in the first type of workplace would not sever the causal link between the crime and the victim's wage loss, but a victim's voluntary choice to not return to work in the second type of workplace could well be an intervening, superseding cause that would preclude a finding that the defendant's crime was the proximate cause of this economic loss. In this case, the record contains no evidence that Douglas's employer would not allow him to miss partial days. In fact, the evidence indicates the contrary--that the employer did not require Douglas to take off entire days but *allowed* him to do so to avoid transportation costs.

In sum, Douglas is entitled to lost wages for time off that was reasonable to enable him to attend court proceedings, including travel time. Out-of-pocket travel expenses may also be awarded as restitution. But the evidence adduced at the hearing does not enable a court to make these determinations. The State did not show what portion of Douglas's time off work was reasonably necessary for his attendance at the court proceedings and what portion, if any, was caused by his voluntary choice not to work for the remainder of the day. Therefore, the district court's award of restitution for entire days off work is not supported by substantial evidence and must be vacated. Because Douglas is clearly entitled some amount of lost wages for at least

10

partial days spent in court proceedings, we must remand for the trial court to determine the quantity of wage loss proximately caused by Donald's criminal conduct.

The trial court's award of restitution for lost wages for August 22, 2011, is affirmed. The award for other lost wages is vacated and the matter is remanded for a new determination of the amount of lost wages proximately caused by Donald's criminal acts.

Judge MELANSON **CONCURS**.

Judge GRATTON, **CONCURRING IN PART** and **DISSENTING IN PART**.

I concur with the majority except for its analysis and reasoning as to the district court's award of lost wages for full days. I do not believe that the district court abused its discretion. While I share the majority's frustration with the rather scant testimony in the record,[1] I believe that the facts and reasonable inferences support the award.

First, Douglas Houser (Douglas) works for Thousand Springs Ranch. It takes him thirty to forty-five minutes to get to work (and to return home), leaving in the morning at 6:15 to 6:30 to arrive at 7:00. He works until 5:30 in the evening when working four ten-hour days per week and 3:30 when working five eight-hour days per week. The address of Thousand Springs Ranch is on the letter in the record from the manager setting forth the time Douglas lost from work. Douglas's address in Weiser is known from testimony at trial and a host of documents in the presentence reports. And, of course, the district court was aware of the address of the courthouse also in Weiser. Douglas testified that from his home to work is twenty-three miles.[2] Douglas's testimony reveals that driving back and forth to work and hearings, together with fuel costs, was a part of the reason he took full days off. The prosecutor argued:

---

[1] Restitution hearings are often relatively cursory and limited in factual development. In fact, restitution claims and hearings are generally limited in large part upon prudential concerns regarding the effective administration of justice. Extended proceedings over restitution issues would overburden the criminal court process. Thus, the trial court is afforded the opportunity to consider hearsay as well as our deference, absent abuse of discretion. *See State v. Straub*, 153 Idaho 882, 292 P.3d 273 (2013); *State v. Waidelich*, 140 Idaho 622, 97 P.3d 489 (Ct. App. 2004). That is not to say, however, that some care should not be taken to demonstrate support for the award of restitution in the record.

[2] The majority states that the relevant distance is between Douglas's workplace and the courthouse and that no evidence of that distance was presented. The district court, who sits in the relatively small town of Weiser, was fully aware of the addresses and distances. From Douglas living in Weiser and the courthouse being in Weiser, one can readily surmise that the distance to his work was at or near the 23 miles to which he testified.

> And so, you know, it just doesn't make a whole lot of sense when he is driving 23 miles to work, he is getting there early in the morning, he has to come back for what, a 9:00 o'clock hearing? It doesn't make any sense.
>
> So then he has got the 9:00 o'clock hearing and is going out after that, and so his employer just said not to come that day.

The district court stated, in part, that "given the distance to his job *and the circumstances*, I think it's reasonable to take the entire day off." (Emphasis added.) Thus, the district court appropriately considered the distance of travel and there is substantial evidence supporting that determination in the record.

Second, Douglas testified that he is a ranch hand. Though he did not elaborate on the duties of a ranch hand, I am sure the district court was generally aware of the duties of a ranch hand who is paid $10.40 per hour. While the majority discusses certain situations in which the need for a temporary absence from employment may or may not justify a full day off, there is no discussion about Douglas's employment situation. The district court was free to draw any number of inferences about Douglas's ability or inability to productively work partial days versus taking full days off. We know that ranch hands' duties are many and widely varied from day to day. The ranch hand may be fixing fence one day, irrigating on another, herding and branding/vaccinating cattle on a third, and clearing brush to conclude the week. These jobs do not lend themselves to working for a while, cleaning up, getting to town for a hearing and then returning. The ranch hand does not simply walk into the office pick up a file and become immediately productive. Aside from preliminary work necessary to secure the tools for the job of the day, the ranch hand must often travel by truck, ATV, or horse to some remote or distant place on the ranch to complete his tasks. The district court was entitled to consider the nature of Douglas's work as one of the "circumstances" rendering it reasonable to take the entire day off.

Third, I disagree that the evidence does not support the district court's conclusion that uncertainty as to when hearings would begin as well as end also contributed to the reasonableness of taking full days off. The majority states that the "uncertainty factor justifies presence at the courthouse only before a proceeding begins, not after it ends." On the other hand, the district court stated that "given the uncertainty of how long a proceeding might take, I think it's reasonable that he take the day off." I agree that Douglas had to be at the courthouse before the time set for the hearing. But, on any given day, he had no idea when the hearing in that particular case--as opposed to others that may be on the docket--would be called and no idea

how long the hearing, once started, would take. Consequently, he and his employer had limited ability to plan when or whether he could bustle back to work and, given the travel distance and the nature of his work, what he could productively accomplish upon return.

Fourth, Douglas is a $10.40 per-hour-employee who one can reasonably infer did not lightly, and without consideration of the circumstances, walk away from a day's wages each time there was a hearing if a reasonable alternative were available. At the time, he could not know if he would ever be able to recoup any or all of the lost wages. More importantly, his employer thought it reasonable that he take the day off. Aside from the reference to fuel costs, one can also infer that the employer, in consideration of the "circumstances," i.e., travel time and nature of work, reasonably determined that taking the full day off made sense.[3] It is a reasoned decision for employee and employer to simply take the full day off rather than travel to work, try to get started with work, make a run back to town for a hearing of unknown length, travel back to work, and try to accomplish something. Those cases described by the majority where an employee can leave temporarily and return are not this case. Here, the employer was very likely unwilling to pay Douglas to engage in the duties of the day, disengage, engage, and disengage again. I would also note, that the letter from the employer in the record states: "This is a computation of the number of hours Douglas Houser *lost from work due to the confrontation with Don Houser*." (Emphasis added.)

Consequently, I respectfully dissent and would affirm the district court.

---

[3] I do not see the value in characterizing the employer's actions as having "allowed" Douglas to take the time off or "not allowing him to miss [or work] partial days."