IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 44937

| STATE OF IDAHO, | ) | 2018 Unpublished Opinion No. 432 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: April 20, 2018 |
| | ) | |
| v. | ) | Karel A. Lehrman, Clerk |
| | ) | |
| ELVIN FRANCES NEBRENSKY, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

Order granting restitution, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

Elvin Frances Nebrensky pled guilty to sexual battery of a minor child. He appeals from the district court's order granting the State's motion for restitution of medical expenses incurred by the victim.[1] Nebrensky asserts the State failed to establish a causal connection between the medical expenses and the charged conduct. He also contends the district court abused its discretion by ordering the full amount of restitution requested in light of Nebrensky's inability to pay.

_____

[1] For the purposes of this opinion, the minor child is referred to as the "victim." However, the mother of the minor child and the Idaho Industrial Commission Crime Victim's Compensation Program are also victims pursuant to the restitution statute. Idaho Code § 19-5304(1)(e)(i) and (iv) respectively define "victim" to include, "[t]he directly injured victim which means a person or entity, who suffers economic loss or injury as the result of the defendant's criminal conduct," and a "person or entity who suffers economic loss because such person or entity has made payments to or on behalf of a directly injured victim . . . ."

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2014, fifty-eight-year-old Nebrensky met the sixteen-year-old victim through the victim's older sister. They met several other times over the following months and communicated hundreds of times via Facebook Messenger. Law enforcement characterized Nebrensky's actions as child grooming behavior, described as actions made with the intention of lowering a child's inhibitions in order to sexually abuse the child.

Two particular occurrences are relevant to the criminal charges that followed. In July 2014, the victim took a sleeping pill after returning home from having dinner with Nebrensky. When the victim awoke he saw that Nebrensky had sent a picture of Nebrensky's penis to him, and he then sent Nebrensky a picture in return. Nebrensky asked when he could perform oral sex on the victim. The following morning, the victim deleted the message and pretended it did not occur. In August 2014, the victim had taken a sleeping pill and Nebrensky, via Facebook Messenger, offered to buy some of the sleeping pills from the victim. The victim subsequently snuck out of his home and Nebrensky picked him up and drove him to Nebrensky's home, where he performed oral sex on the victim and gave him fifty dollars in exchange for the pills.

Nebrensky was charged with felony sexual exploitation of a minor, Idaho Code § 18-1507, for the occurrence in July, and felony sexual battery of a child, I.C. § 18-1508A, for the occurrence in August. Pursuant to the plea agreement, Nebrensky pled guilty to sexual battery and in exchange, the State agreed to dismiss the sexual exploitation charge. Nebrensky also agreed to pay restitution for both counts originally charged. The court imposed a sentence of life imprisonment with six years determinate and reserved jurisdiction to determine restitution at a later date.[2]

Thereafter, the State requested restitution for the victim's mother and the Idaho Industrial Commission Crime Victim's Compensation Program (CVCP) for medical expenses incurred on the victim's behalf. The State subsequently amended the request to include additional medical expenses incurred by the victim's mother. The total restitution requested amounted to $13,811.45, comprised of $11,883.29 for the mother and $1,928.16 for CVCP. The court held a

---

[2]     The conviction and sentence were affirmed on appeal. *State v. Nebrensky*, Docket No. 43418 (Ct. App. Jan. 29, 2016) (unpublished).

hearing, at which time the mother testified regarding her son's numerous psychological and physiological injuries. She sought out-of-pocket expenses for the victim's medical treatments incurred after July 6, 2014, when the actions that led to the sexual exploitation charge took place. These included treatments for post-traumatic stress disorder (PTSD), anxiety, medications, shoulder and throat tics, joint injections, tonsillectomy, gastrointestinal issues, colonoscopies, endoscopy, and physical therapy. The State's victim advocate also testified regarding payments made by CVCP on the victim's behalf.

The district court ordered Nebrensky to pay the full amount of restitution requested. Nebrensky timely appeals.

## II.

## ANALYSIS

Nebrensky requests this Court reduce or vacate the restitution order awarded to the victim. Idaho Code § 19-5304(2) authorizes a sentencing court to order a defendant to pay restitution for economic loss to the victim of a crime. The decision of whether to order restitution, and in what amount, is within the discretion of a trial court, guided by consideration of the factors set forth in I.C. § 19-5304(7) and by the policy favoring full compensation to crime victims who suffer economic loss. *State v. Richmond*, 137 Idaho 35, 37, 43 P.3d 794, 796 (Ct. App. 2002); *State v. Bybee*, 115 Idaho 541, 543, 768 P.2d 804, 806 (Ct. App. 1989). Thus, we will not overturn an order of restitution unless an abuse of discretion is shown. *Richmond*, 137 Idaho at 37, 43 P.3d at 796. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it, and reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

To meet the second and third requirements of this analysis, the trial court must base the amount of restitution upon the preponderance of evidence submitted by the prosecutor, defendant, victim, or presentence investigator. I.C. § 19-5304(6); *State v. Lombard*, 149 Idaho 819, 822, 242 P.3d 189, 192 (Ct. App. 2010). Thus, the State must prove, by a preponderance of the evidence, a causal relationship between the defendant's criminal conduct and the damages suffered by the victim. I.C. § 19-5304(7); *State v. Corbus*, 150 Idaho 599, 602, 249 P.3d 398,

3

401 (2011); *State v. Hill*, 154 Idaho 206, 212, 296 P.3d 412, 418 (Ct. App. 2012). Causation consists of actual cause and true proximate cause. *Corbus*, 150 Idaho at 602, 249 P.3d at 401; *State v. Lampien*, 148 Idaho 367, 374, 223 P.3d 750, 757 (2009). Actual cause refers to whether a particular event produced a particular consequence. *Corbus*, 150 Idaho at 602, 249 P.3d at 401; *Lampien*, 148 Idaho at 374, 223 P.3d at 757. A "but for" test of actual cause is used in circumstances where there is only one cause or where two or more possible causes were not acting concurrently. *Corbus*, 150 Idaho at 602, 249 P.3d at 401; *Lampien*, 148 Idaho at 374, 223 P.3d at 757.

Proximate cause focuses on the foreseeability of the injury, requiring us to determine whether the injury and manner of occurrence were so highly unusual that we can say, as a matter of law, that a reasonable person making an inventory of the possibilities of harm that his or her conduct might produce, would not have reasonably expected the injury to occur. *Corbus*, 150 Idaho at 602, 249 P.3d at 401; *Lampien*, 148 Idaho at 374, 223 P.3d at 757; *State v. Houser*, 155 Idaho 521, 525, 314 P.3d 203, 207 (Ct. App. 2013). The causal chain linking a defendant's criminal conduct to the economic loss suffered by a victim may be severed by an independent act or force constituting an intervening, superseding cause. *Corbus*, 150 Idaho at 602, 249 P.3d at 401; *Lampien*, 148 Idaho at 374, 223 P.3d at 757; *Houser*, 155 Idaho at 525, 314 P.3d at 207. In general, an intervening, superseding cause replaces the defendant's act as the proximate cause of the victim's injury. *Corbus*, 150 Idaho at 602, 249 P.3d at 401; *Lampien*, 148 Idaho at 374-75, 223 P.3d at 757-58; *Houser*, 155 Idaho at 525, 314 P.3d at 207. However, to relieve a defendant of criminal liability, an intervening, superseding cause must be an unforeseeable and extraordinary occurrence. *Corbus*, 150 Idaho at 602-03, 249 P.3d at 401-02; *Lampien*, 148 Idaho at 375, 223 P.3d at 758; *Houser*, 155 Idaho at 525, 314 P.3d at 207. The defendant remains criminally liable if either the possible consequence might reasonably have been contemplated or the defendant should have foreseen the possibility of harm of the kind that could result from his or her act. *Corbus*, 150 Idaho at 602-03, 249 P.3d at 401-02; *Lampien*, 148 Idaho at 375, 223 P.3d at 758; *Houser*, 155 Idaho at 525, 314 P.3d at 207.

The determination of the amount of restitution, which includes the issue of causation, is a question of fact for the trial court. *Corbus*, 150 Idaho at 602, 249 P.3d at 401; *State v. Hamilton*, 129 Idaho 938, 943, 935 P.2d 201, 206 (Ct. App. 1997). The district court's factual findings with regard to restitution will not be disturbed on appeal if supported by substantial evidence.

*Corbus*, 150 Idaho at 602, 249 P.3d at 401; *Lombard*, 149 Idaho at 822, 242 P.3d at 192. Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *State v. Straub*, 153 Idaho 882, 885, 292 P.3d 273, 276 (2013).

Nebrensky does not assert the medical expenses were inappropriate because they were incurred before the commission of either of the charged offenses; his challenge is based on his belief that the State did not present substantial and competent evidence to establish actual or proximate cause for the victim's medical expenses. He argues actual causation is not established and even if it were, that the State failed to establish proximate cause as some of the victim's injuries were not reasonably foreseeable. Nebrensky cites *State v. Shafer*, 144 Idaho 370, 161 P.3d 689 (Ct. App. 2007), as support for his argument that he is required only to pay for restitution for the two crimes charged, which resulted from his oral-to-genital contact with the victim and his possession of a photo of the victim's penis, and he is not required to pay restitution for any other criminal conduct. In *Shafer*, the defendant pled guilty to leaving the scene of the accident and was ordered to pay restitution to the other driver. *Id.* at 371, 161 P.3d at 690. On appeal, Shafer asserted that the damages arose from the accident itself and not his crime of leaving the scene. *Id.* This Court agreed and found that the damages were not a result of the charged crime and therefore, the lower court did not have the authority to order him to pay restitution on this basis. *Id.* at 375, 161 P.3d at 694. While this Court ultimately affirmed the restitution order, it did so based on Shafer's consent to pay for those losses as a term of his plea agreement. *Id.*

In this case, Nebrensky takes issue with the mother's testimony that some of her son's issues were related to stress caused by person-to-person contact with Nebrensky and her belief that Nebrensky performed anal sex on her son. He asserts the mother's testimony fails to identify which injuries in particular were caused by the charged conduct as opposed to the uncharged conduct she referenced. This argument overlooks the substantial factor test, which applies where, as here, multiple causes or factors produce an injury. As noted above, the "but for" test is used in circumstances where there is only one actual cause or where two or more possible causes were not acting concurrently; however, "where there are multiple independent forces that may have caused or contributed to the harm," the substantial factor test is used. *State v. Wisdom*, 161 Idaho 916, 921, 393 P.3d 576, 581 (2017). The "substantial factor" test is established if the conduct was a substantial factor in bringing about the injury, even if two or

5

more possible causes may have produced the injury. *Id*. Therefore, the State is only required to establish that the charged conduct was a substantial factor among multiple causes or factors that produced the harm.

Nebrensky asserts that lay testimony of the victim's mother as the key evidence was insufficient and that expert knowledge was necessary for the State to prove the requisite causal connection. He objected on the same grounds at the restitution hearing. In overruling his objection, the district court noted:

> The objection that an expert's necessary, I'm overruling that. Even if this were a personal injury case, a victim can testify about damages, and the victim in this case at the time of the event was sixteen, so I don't know why [victim's mother] can't testify as to these amounts, especially if she's still paying, which I think she has the right to pay through her insurance up through age 26, so that objection's overruled, and the other objection as far as whether these are related to the criminal event I think is subject to cross-examination . . . .

On appeal, Nebrensky relies on *State v. Card*, 146 Idaho 111, 190 P.3d 930 (Ct. App. 2008) to support his argument that the mother was not competent to testify based on the Court's holding that expert testimony is necessary when causation is "not a matter within the common knowledge and experience of the average person." *Id.* at 116, 190 P.3d at 935. The circumstances in *Card* are readily distinguishable from the present case. In *Card*, this Court reversed a restitution order for massages, detoxifying foot baths, and herbal colon cleanses the claimant received after a vehicle collision. *Id.* at 113, 190 P.3d at 932. This Court emphasized that in reaching its conclusion it considered that there were no letters or notes from any physician, no hospital records or any medical evidence indicating that the claimant suffered from any identifiable medical condition or that her condition was related to the car accident. *Id.* at 115, 190 P.3d at 934. The claimant's own testimony was that no medical professional or treatment provider had said that there was a causal connection between her physical or emotional complaints and the accident. *Id.* at 113, 190 P.3d at 932. Further, this Court highlighted that the treatments were not sought soon after the accident. *Id.* at 116, 190 P.3d at 935.

This is in stark contrast to the present circumstances. Regarding the records submitted relating to her son's medical and mental health treatments, the victim's mother testified that "all of the information is relevant and related to the offense for what Mr. Nebrensky was charged

with." Under oath, the victim's mother confirmed that she had reviewed the records to be sure.[3] She further testified that she has "firsthand knowledge based on what the doctor stated" because she was present during her son's doctor appointments. Regarding the victim's gastrointestinal-related treatments, the mother stated that the doctors discussed that "PTSD and things caused by mental health can have a gastrointestinal effect" and that she has "a letter from his doctor stating that these are related." She stated these treatments, which included a colonoscopy and an endoscope were performed "right after the first documented abuse started," referring to the time when the Facebook Messenger exchanges began between Nebrensky and her son. On cross-examination, she testified that her son "had to go to the emergency room four days in a row and be admitted into [a medical center] because of the trauma he endured and the PTSD and the fact that he couldn't go to the bathroom for three weeks."

The mother further testified about treatments needed to help remedy her son's severe tics, including physical therapy to relax his muscles and naturopathy to teach him relaxation methods to help with anxiety. She stated he did not have the tics prior to the sexual abuse by Nebrensky. She stated that "ticks (sic) are related to abuse and medications" and noted "again I do have a letter from the psychiatrist." She also testified that her son had throat issues along with his tics which resulted in him having a procedure to remove his tonsils. She indicated she had a letter from his doctor stating "that was all crime-related as far as ticks (sic) and a swallowing in his throat." On cross-examination she acknowledged, "I'm not an expert on PTSD." However, she went on to declare:

> I do know what I've heard firsthand from his psychiatrist, and that I also have a letter from her that--this is really hard to explain. PTSD can affect your muscles tensing up, being scared in public that somebody's gonna come behind you and jump you, seeing Elvin's face when you shut your eyes. His physical therapy and his holistic medicine doctor are 100 percent directly related, and I would be more than happy to have both the psychiatrist and those doctors write letters to this court verifying that.

Moreover, on cross-examination, the mother discussed her son's psychiatry appointments, stating she attended all of them with her son except for certain sessions while he was

---

[3] In addition, insurance documents for such treatments were admitted, including entries with "patient view only" designations, meaning psychiatric care records are limited to doctor only review.

hospitalized. When asked whether "these meetings all had to do with his contact and communication with Mr. Nebrensky," she replied, "One hundred percent."[4]

The victim advocate for CVCP also testified regarding the scrutiny that the CVCP gives to claims made by victims. She explained that the CVCP contacts the providers directly as opposed to the person applying "because they want to make sure it's correct" and then they "go through a process to make sure it's crime-related before they pay on it." Additionally, health insurance companies scrutinize claims to ensure they are medically necessary before making payments. This evidence constitutes substantial evidence supporting the award of restitution.

The State presented substantial and competent evidence to establish actual and proximate cause for the victim's medical expenses. The victim proved, beyond a preponderance of the evidence, that every item requested for reimbursement is related to the abuse the victim suffered from Nebrensky. Contrary to Nebrensky's argument, expert testimony is not necessary to prove the requisite causal connection. Requiring the victim's team of medical professionals and treatment providers to lay the foundation and testify at the restitution hearing was not necessary in this case. The State's evidence showed that the expenses for which the victim requested restitution were attributable to the charged conduct of Nebrensky. Nebrensky argues that the medical expenses claimed for the charged abuse were not separated from other alleged abuse which was not charged or proven. However, this argument overlooks that the charged abuse was necessarily part of all abuse by Nebrensky, satisfying the substantial factor test. Nebrensky acknowledges that sexual abuse can result in psychiatric care. It is, then, foreseeable that psychiatric conditions manifest in physical illness and related conditions.

Similarly, Nebrensky's argument that the district court abused its discretion when awarding the full amount of restitution requested by failing to place more weight on his current and future ability to pay is also unpersuasive. At the conclusion of the restitution hearing the court acknowledged Nebrensky's financial resources:

> [T]he perpetrator in this case in all likelihood won't make a payment . . . for five or six years because of the sentence that I imposed, but given the circumstances, any less sentence would be highly inappropriate, so for [the victim's mother] to be subject to today's ordeal when I find as a matter of fact and law that she didn't

---

[4] Nebrensky acknowledges that a psychiatrist's letter linking those problems to the sexual abuse was in the sentencing materials and could be considered by the court, although not admitted at the restitution hearing.

need to be put to that is made even more reprehensible by the ultimate reality that she'll never see a single penny for her efforts . . . .

Further, Idaho Code instructs that "the immediate inability to pay restitution by a defendant shall not be, in and of itself, a reason to not order restitution." I.C. § 19-5304(7). The district court is to "consider" the inability to pay and it did so. Nebrensky has not shown an abuse of discretion.

In granting the State's motion for restitution, the district court correctly noted that "there's no indication of any prior psychological problems, any prior cutting, any prior three-week constipation, any prior ticks [sic]" and awarded $11,883.29 to the victim's mother and $1,928.16 to CVCP. Substantial and competent evidence supports the $13,811.45 restitution amount.

## III.

## CONCLUSION

The State presented substantial and competent evidence to establish actual and proximate cause for the victim's medical expenses. Substantial evidence supports the district court's determination of the amount of restitution. We affirm the order of restitution.

Judge GUTIERREZ and Judge HUSKEY **CONCUR**.

9